JAMES PETERS *v.* DEPARTMENT OF
SOCIAL SERVICES ET AL.
(SC 17311)

Sullivan, C. J., and Borden, Norcott, Katz and Zarella, Js.

Argued February 14—officially released April 26, 2005

*Roger Lee Crossland,* for the appellant (plaintiff).

*Robert A. Nagy,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellees (defendants).

*Opinion*

NORCOTT, J. The plaintiff, James Peters, appeals from the judgment of the trial court dismissing his administrative appeal from a decision of the named defendant, the department of social services (department), upholding the state's claim for a lien, which was filed by the defendant department of administrative services (administrative services), against an arbitra-

tion award granted to the plaintiff. On appeal,[1] the plaintiff contends that the trial court improperly concluded that the state was entitled, pursuant to General Statutes §§ 17b-93[2] and 17b-94,[3] to the full amount of its statutory lien for medicaid and public assistance reimbursement

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] General Statutes § 17b-93 provides in relevant part: "(a) If a beneficiary of aid under the state supplement program, medical assistance program, aid to families with dependent children program, temporary family assistance program or state-administered general assistance program has or acquires property of any kind or interest in any property, estate or claim of any kind, except moneys received for the replacement of real or personal property, the state of Connecticut shall have a claim subject to subsections (b) and (c) of this section, which shall have priority over all other unsecured claims and unrecorded encumbrances, against such beneficiary for the full amount paid, subject to the provisions of section 17b-94, to him or in his behalf under said programs . . . .

"(c) No claim shall be made, or lien applied, against any payment made pursuant to chapter 135, any payment made pursuant to section 47-88d or 47-287, any court-ordered retroactive rent abatement, including any made pursuant to subsection (e) of section 47a-14h, section 47a-4a, 47a-5, or 47a-57, or any security deposit refund pursuant to subsection (d) of section 47a-21 paid to a beneficiary of assistance under the state supplement program, medical assistance program, aid to families with dependent children program, temporary family assistance program or state-administered general assistance program. . . .

"(e) The Commissioner of Social Services shall adopt regulations, in accordance with chapter 54, establishing criteria and procedures for adjustment of the claim of the state of Connecticut under subsection (a) of this section. The purpose of any such adjustment shall be to encourage the positive involvement of noncustodial parents in the lives of their children and to encourage noncustodial parents to begin making regular support payments."

Although § 17b-93 has been amended since 1998 when the state's claim was filed in this case, the changes are not relevant to this appeal. For purposes of this opinion, references herein to § 17b-93 are to the current revision of the statute.

[3] General Statutes § 17b-94 provides in relevant part: "(a) In the case of causes of action of beneficiaries of aid under the state supplement program, medical assistance program, aid to families with dependent children program, temporary family assistance program or state-administered general assistance program, subject to subsections (b) and (c) of section 17b-93 . . . the claim of the state shall be a lien against the proceeds therefrom in the amount of the assistance paid or fifty per cent of the proceeds received

from the proceeds of the settlement of a personal injury

by such beneficiary . . . after payment of all expenses connected with the cause of action, whichever is less, for repayment under said section 17b-93, and shall have priority over all other claims except attorney's fees for said causes, expenses of suit, costs of hospitalization connected with the cause of action by whomever paid over and above hospital insurance or other such benefits, and, for such period of hospitalization as was not paid for by the state, physicians' fees for services during any such period as are connected with the cause of action over and above medical insurance or other such benefits; and such claim shall consist of the total assistance repayment for which claim may be made under said programs. The proceeds of such causes of action shall be assignable to the state for payment of the amount due under said section 17b-93, irrespective of any other provision of law. Upon presentation to the attorney for the beneficiary of an assignment of such proceeds executed by the beneficiary or his conservator or guardian, such assignment shall constitute an irrevocable direction to the attorney to pay the Commissioner of Administrative Services in accordance with its terms, except if, after settlement of the cause of action or judgment thereon, the Commissioner of Administrative Services does not inform the attorney for the beneficiary of the amount of lien which is to be paid to the Commissioner of Administrative Services within forty-five days of receipt of the written request of such attorney for such information, such attorney may distribute such proceeds to such beneficiary and shall not be liable for any loss the state may sustain thereby.

"(b) In the case of an inheritance of an estate by a beneficiary of aid under the state supplement program, medical assistance program, aid to families with dependent children program, temporary family assistance program or state-administered general assistance program, subject to subsections (b) and (c) of section 17b-93, fifty per cent of the assets of the estate payable to the beneficiary or the amount of such assets equal to the amount of assistance paid, whichever is less, shall be assignable to the state for payment of the amount due under said section 17b-93. The state shall have a lien against such assets in the applicable amount specified in this subsection. The Court of Probate shall accept any such assignment executed by the beneficiary or any such lien notice if such assignment or lien notice is filed by the Commissioner of Administrative Services with the court prior to the distribution of such inheritance, and to the extent of such inheritance not already distributed, the court shall order distribution in accordance therewith. If the Commissioner of Administrative Services receives any assets of an estate pursuant to any such assignment, the commissioner shall be subject to the same duties and liabilities concerning such assigned assets as the beneficiary."

Although § 17b-94 has been amended since 1998 when the state's claim was filed in this case, the changes are not relevant to this appeal. For purposes of this opinion, references herein to § 17b-94 are to the current revision of the statute.

action without a pro rata reduction for the attorney's fees that had been incurred by the plaintiff in connection therewith. We conclude that although the trial court properly dismissed the plaintiff's administrative appeal, it should have been dismissed on different grounds. We conclude that the trial court lacked subject matter jurisdiction over the plaintiff's administrative appeal pursuant to the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq., because the administrative appeal did not relate to a " '[c]ontested case' " as that term is defined by General Statutes § 4-166 (2).[4] We, therefore, reverse the judgment and remand the case to the trial court with direction to dismiss the plaintiff's administrative appeal for lack of subject matter jurisdiction.

The record reveals the following facts and procedural history. The plaintiff was seriously injured in a motorcycle accident. Having incurred medical bills in the amount of $280,000, the plaintiff received, from the state, medicaid assistance in the amount of $62,890.72 and general cash assistance in the amount of $7700. The plaintiff thereafter obtained an arbitration award in the amount of $747,500, reduced to $526,298.33 after deducting attorney's fees and costs.

Administrative services subsequently notified the plaintiff that it was placing a lien on the proceeds of his personal injury case for reimbursement of the medicaid assistance and general cash assistance the state had

---

[4] General Statutes § 4-166 (2) provides: " 'Contested case' means a proceeding, including but not restricted to rate-making, price fixing and licensing, *in which the legal rights, duties or privileges of a party are required by state statute or regulation to be determined by an agency after an opportunity for hearing or in which a hearing is in fact held,* but does not include proceedings on a petition for a declaratory ruling under section 4-176, hearings referred to in section 4-168, or hearings conducted by the Department of Correction or the Board of Pardons and Paroles . . . ." (Emphasis added.)

provided, for a total lien amount of $70,590.72.[5] Thereafter, the plaintiff's attorney sent a letter to the department's office of legal counsel requesting a hearing to challenge the amount of the lien, and stating his position that the lien should be reduced by one third for "attorneys' fees incurred in the resolution of this matter . . . ."

Subsequently, the department held a hearing, which the notice of decision stated was conducted in accordance with General Statutes §§ 17b-60[6] and 17b-61,[7] as well as the UAPA. The hearing officer rejected the plaintiff's contention that "the amount of the [s]tate's lien for accident related medical assistance [should] be reduced by [a]ttorney's fees and costs pro rata by one third

[5] The department of administrative services is responsible for the "billing and collection of any money due to the state in public assistance cases . . . ." General Statutes § 4a-12 (a) (2).

[6] General Statutes § 17b-60 provides in relevant part: "An aggrieved person authorized by law to request a fair hearing on a decision of the Commissioner of Social Services or the conservator of any such person on his behalf may make application for such hearing in writing over his signature to the commissioner and shall state in such application in simple language the reasons why he claims to be aggrieved. Such application shall be mailed to the commissioner within sixty days after the rendition of such decision. The commissioner shall thereupon hold a fair hearing within thirty days from receipt thereof and shall, at least ten days prior to the date of such hearing, mail a notice, giving the time and place thereof, to such aggrieved person . . . ."

[7] General Statutes § 17b-61 provides in relevant part: "(a) Not later than sixty days after such hearing, or three business days if the hearing concerns a denial of or failure to provide emergency housing, the commissioner or his designated hearing officer shall render a final decision based upon all the evidence introduced before him and applying all pertinent provisions of law, regulations and departmental policy, and such final decision shall supersede the decision made without a hearing, provided final definitive administrative action shall be taken by the commissioner or his designee within ninety days after the request of such hearing pursuant to section 17b-60. . . .

"(b) The applicant for such hearing, if aggrieved, may appeal therefrom in accordance with section 4-183. Appeals from decisions of said commissioner shall be privileged cases to be heard by the court as soon after the return day as shall be practicable. . . ."

because the [s]tate had the opportunity to sue and it [did not] and saved that cost." The hearing officer also concluded that the amount of the lien as calculated by administrative services was correct. Accordingly, the hearing officer dismissed the plaintiff's claim and ruled that the state could recover from the plaintiff's arbitration award the assistance payments in the total amount of $70,590.72.

The plaintiff then appealed from the department's administrative decision to the trial court. The trial court concluded that, although federal medicaid statutes require that the states have a policy for recovering assistance moneys from third parties, neither federal nor Connecticut law require the state to "pursue third parties on its own." The trial court also determined that neither Connecticut nor federal law provides for pro rata reductions in medicaid lien amounts for "costs incurred in procuring recovery from third parties." Accordingly, the trial court rendered judgment dismissing the plaintiff's appeal. This appeal followed.[8]

On appeal, the plaintiff, relying primarily on *Norwest Bank of North Dakota, N.A.* v. *Doth*, 159 F.3d 328, 334–36 (8th Cir. 1998) (Heaney, J., concurring), and *Wilson* v. *State*, 142 Wash. 2d 40, 49–50, 10 P.3d 1061 (2000), cert. denied, 532 U.S. 1020, 121 S. Ct. 1959, 149 L. Ed. 2d 755 (2001), claims that the trial court

---

[8] The plaintiff appealed from the judgment of the trial court to the Appellate Court. Shortly thereafter, the department filed a motion to dismiss the appeal, contending that the court lacked subject matter jurisdiction to entertain it in the absence of a statutory requirement that the department hold a hearing before it imposes a lien pursuant to § 17b-94, which means that it was not a " '[c]ontested case' " under § 4-166 (2). The Appellate Court denied the department's motion without prejudice, but sua sponte ordered the parties to brief the issue of whether the trial court lacked subject matter jurisdiction under the UAPA because the department's decision was not a "final decision in a contested case . . . ." After briefing was completed, we transferred the appeal to this court pursuant to Practice Book § 65-1. See also footnote 1 of this opinion.

improperly concluded that the state was entitled to the full statutory lien without a pro rata reduction for his attorney's fees. The department contends otherwise in response, and also claims that both the trial court and this court lack subject matter jurisdiction under the UAPA to hear the plaintiff's appeal because there is no " '[c]ontested case' " under § 4-166 (2) as the hearing was not required by state statute, but rather, pursuant to the settlement in *DelVecchio* v. *Freedman,* United States District Court, Docket No. N-86-136 (D. Conn. March 23, 1987).

We begin our analysis with the subject matter jurisdiction claim and the applicable standard of review. "We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *Nine State Street, LLC* v. *Planning & Zoning Commission,* 270 Conn. 42, 45, 850 A.2d 1032 (2004). Moreover, "[i]t is a fundamental rule that a court may raise and review the issue of subject matter jurisdiction at any time. . . . Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . ." (Citations omitted; internal quotation marks omitted.) *Lewis* v. *Gaming Policy Board,* 224 Conn. 693, 698, 620 A.2d 780 (1993); id., 699 (law of case doctrine did not preclude one trial judge from reexamining previous determination by another trial judge that subject matter jurisdiction existed). The subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal. Id., 698–99; see also, e.g., *Webster Bank* v. *Zak,* 259 Conn. 766, 774, 792 A.2d 66 (2002) ("[t]his court has often stated that the question of subject matter jurisdic-

tion, because it addresses the basic competency of the court, can be raised by any of the parties, or by the court sua sponte, at any time" [internal quotation marks omitted]).[9]

"There is no absolute right of appeal to the courts from a decision of an administrative agency. . . . The UAPA grants the Superior Court jurisdiction over appeals of agency decisions only in certain limited and well delineated circumstances. . . . Judicial review of an administrative decision is governed by General Statutes § 4-183 (a) of the UAPA, which provides that [a] person who has exhausted all administrative remedies . . . and who is aggrieved by a final decision may appeal to the superior court . . . . A final decision is defined in § 4-166 (3) (A) as the agency determination in a contested case . . . .

"A contested case is defined in § 4-166 (2) as a proceeding . . . in which the legal rights, duties or privileges of a party are required by statute to be determined by an agency after an opportunity for hearing or in which a hearing is in fact held . . . . Not every matter or issue determined by an agency qualifies for contested

[9] Accordingly, we disagree with the plaintiff's contention that the department is precluded from raising the issue of subject matter jurisdiction in this court because it failed to do so before the trial court. We also note that the plaintiff's reliance on *Meinket* v. *Levinson*, 193 Conn. 110, 474 A.2d 454 (1984), is misplaced. In *Meinket*, this court stated, inter alia, that, "[t]he modern law of civil procedure suggests that even litigation about subject matter jurisdiction should take into account the importance of the principle of the finality of judgments, particularly when the parties have had a full opportunity originally to contest the jurisdiction of the adjudicatory tribunal. . . . Under the restatement view, a collateral attack on a judgment in a contested case, such as this one, may raise only limited claims of lack of subject matter jurisdiction." (Citations omitted; internal quotation marks omitted.) Id., 114. *Meinket* is inapposite because that case involved a collateral attack on a default judgment that had been rendered after a prior proceeding. Id., 111–12. In contrast, the present case simply is a direct appeal from the initial proceedings before the trial court, and thus raises no such finality of judgment issues.

case status. . . . [W]e have determined that even in a case where a hearing is in fact held, in order to constitute a contested case, a party to that hearing must have enjoyed a statutory right to have his legal rights, duties or privileges determined by that agency holding the hearing . . . . In the instance where no party to a hearing enjoys such a right, the Superior Court is without jurisdiction over any appeal from that agency's determination." (Citations omitted; internal quotation marks omitted.) *Lewis* v. *Gaming Policy Board,* supra, 224 Conn. 699–700, quoting *New England Dairies, Inc.* v. *Commissioner of Agriculture,* 221 Conn. 422, 427, 604 A.2d 810 (1992).

In *Lewis* v. *Gaming Policy Board,* supra, 224 Conn. 694–95, the executive director of the gaming policy board had terminated a state lottery supervisor for insubordination. The supervisor received an initial pretermination hearing before the executive director, and a second hearing before the board, which approved the director's decision to terminate him. Id., 695. The supervisor then appealed from that administrative decision to the trial court pursuant to General Statutes § 4-183 (a) of the UAPA, and the trial court dismissed the administrative appeal. Id., 696.

On appeal, this court stated that, "[e]ven if the plaintiff did have a legal right or privilege in continued employment with the division, and even if that right or privilege was terminated in a deficient proceeding before the executive director and the board, the plaintiff still cannot prevail unless the defendants were statutorily required to determine the plaintiff's legal right or privilege to his continued employment in a hearing." Id., 700–701. This court affirmed the trial court's determination that it lacked subject matter jurisdiction for lack of a "contested case" because the hearing was not statutorily required. Id., 702–703. The court reviewed all of the statutes governing the "activities of the division of

special revenue and the gaming policy board"; id., 701; and concluded that, "in the absence of an express statutory requirement obligating the defendants to determine the plaintiff's legal right or privilege to continued employment, the plaintiff's claim fails." Id., 703. In so holding, the court rejected the supervisor's argument that the existence of an agency personnel policy requiring pretermination hearings rendered his a "contested case" under the UAPA. Id., 703–704. The court stated that, "although agency regulations, rules or policies may require the agency to hold a hearing, that does not constitute a matter as a 'contested case' under § 4-166 (2) unless the plaintiff's rights or privileges are 'statutorily' required to be determined by the agency. If the plaintiff's rights or privileges are not 'statutorily' required to be determined by the agency, a 'contested case' does not exist and a plaintiff would have no right to appeal pursuant to § 4-183 (a)."[10] Id., 705; see also, e.g., *Dyous* v. *Psychiatric Security Review Board*, 264 Conn. 766, 775, 826 A.2d 138 (2003) (reviewing appeal options provided by General Statutes § 17a-597 [a] and

[10] In addition to the plain language of § 4-166 (2), the court found in the legislative history and the case law of other jurisdictions additional support for the proposition that the hearing must be mandated by statute to qualify as a "contested case" under the UAPA. *Lewis* v. *Gaming Policy Board*, supra, 224 Conn. 706–709. It noted that when § 4-166 (2) first was enacted in 1971; Public Acts 1971, No. 854, § 1; it "contained the language 'required by law' rather than 'required by statute.' The phrase 'required by law' is found in the 1961 Model State Administrative Procedure Act, and is also found in the statutes of most other jurisdictions that have adopted the model act. . . . The term 'law' as contained in the contested case provisions in other jurisdictions has a broader meaning than the term 'statute,' and has been interpreted in other jurisdictions to refer generically to any species of law, including constitutional provisions, and agency rules, regulations and policies. . . . In 1973, the Connecticut legislature amended § 4-166 (2) and replaced the 'required by law' language with 'required by statute.' . . . By amending § 4-166 (2) to replace the phrase, 'required by law,' with the phrase, 'required by statute,' the legislature clearly manifested an intent that only a determination of rights, duties and privileges required by statute would constitute a basis for a 'contested case.' " (Citations omitted.) *Lewis* v. *Gaming Policy Board*, supra, 706–707.

concluding that "there is no administrative appeal from the decision of the [psychiatric security review board] transferring the plaintiff to a maximum security facility"); *Morel* v. *Commissioner of Public Health*, 262 Conn. 222, 236–37, 811 A.2d 1256 (2002) (concluding that vendor could not take administrative appeal of his disqualification from federal supplemental food program because department hearing was required by federal regulation, not state statute), overruled on other grounds by *Commission on Human Rights & Opportunities* v. *Board of Education*, 270 Conn. 665, 675–76, 855 A.2d 212 (2004); *Bailey* v. *Medical Examining Board for State Employee Disability Retirement*, 75 Conn. App. 215, 221–23, 815 A.2d 281 (2003) (no right to appeal from board's denial of disability retirement benefits because chapter containing applicable statute was silent as to hearings before board).

Indeed, the court further noted in *Lewis* that, "[a]lthough § 4-166 (2) excludes a large class of agency decision-making from contested case status, it nonetheless provides that the legislature, rather than the agencies, has the primary and continuing role in deciding which class of proceedings should enjoy the full panoply of procedural protections afforded by the UAPA to contested cases, including the right to appellate review by the judiciary. Deciding which class of cases qualifies for contested case status reflects an important matter of public policy and 'the primary responsibility for formulating public policy must remain with the legislature.' " *Lewis* v. *Gaming Policy Board*, supra, 224 Conn. 709.

"To ascertain whether a statute requires an agency to determine the legal rights, privileges or duties of a party, we need to examine all the statutory provisions that govern the activities of the particular agency or agencies in question." Id., 701. We begin with the relevant lien statutes, specifically §§ 17b-93 and 17b-94. See

footnotes 2 and 3 of this opinion. We note that the text of neither statute requires a hearing prior to the department's imposition of a lien on the proceeds of a lawsuit. Moreover, our review of the social services statutes reveals a wide variety of specific circumstances wherein the legislature has mandated the provision of a hearing by the department, none of which apply to the imposition of a lien. See, e.g., General Statutes § 17b-16b (limitation of benefits for persons with outstanding state or federal felony arrest warrants); General Statutes § 17b-66 (public assistance determinations); General Statutes § 17b-654 (determinations with respect to applicants for or recipients of vocational rehabilitation services).[11] "The contrast between [the lien statutes]

[11] See also General Statutes § 17b-77 (providing hearings for persons "aggrieved by" department decisions as to "good cause" or "best interests of the child" with respect to assistance applicants' failure to provide information about absentee parent); General Statutes § 17b-81 (c) (determination of contributions by legally liable relatives pursuant to General Statutes § 4a-12); General Statutes § 17b-99 (a) (revocation of vendor licenses and franchises); General Statutes § 17b-112 (g) ("[a]n applicant or recipient of temporary family assistance who is adversely affected by a decision of the Commissioner of Social Services may request and shall be provided a hearing"); General Statutes § 17b-241 (b) (rates of free-standing detoxification centers); General Statutes § 17b-242 (a) (rates of home health care agencies); General Statutes § 17b-271 (termination of agreements entered into pursuant to General Statutes § 17b-267 between department and fiscal intermediary agencies or organizations); General Statutes § 17b-275 (physician and pharmacy lock-in arrangements for medicaid recipients utilizing medical services or items at "frequency or amount that is not medically necessary"); General Statutes § 17b-341 (regulation of rates of self-pay long-term care facilities); General Statutes § 17b-351 (b) (compensation for loss of constructed, but unlicensed nursing home beds); General Statutes § 17b-352 (e) (certificates of need for long-term care facilities); General Statutes § 17b-357 (d) (compliance with federal statutes governing long-term care facilities); General Statutes § 17b-358 (a) (denial of long-term care facility's application to terminate department's appointment of "temporary manager" to oversee operations and compliance with federal law); General Statutes § 17b-496 (persons aggrieved by department decisions with respect to Connecticut Pharmaceutical Assistance Contract to the Elderly and the Disabled Program); General Statutes § 17b-526 (c) (department determinations with respect to financial feasibility of construction of continuing care facilities); General Statutes § 17b-749 (c) (7) and (8) (commissioner must provide

and those statutes is persuasive evidence of a lack of a similar legislative purpose to impose by statute a hearing requirement . . . ." *Morel* v. *Commissioner of Public Health,* supra, 262 Conn. 239–40.

This lack of a statutory prerequisite is consistent with the department's position that it provides such hearings pursuant to a settlement agreement that the department entered into in *DelVecchio* v. *Freedman,* supra, Docket No. N-86-136. In *DelVecchio,* the parties entered into a stipulation of dismissal in exchange for the department's promulgation of new notices, policies and procedures with respect to statutory liens. These policies and procedures included the provision of hearings to contest the existence or amounts of the claimed statutory liens, pursuant to then General Statutes § 17-2a, which is now § 17b-60.[12]

Accordingly, we conclude that, in the absence of a statute *requiring* that the department conduct a hearing with respect to the liens, the " '[c]ontested case' " requirement of § 4-166 (2) was not satisfied, and the trial court accordingly lacked subject matter jurisdiction under the UAPA.[13] Accordingly, although the trial

administrative hearing and appeals process with respect to child care subsidy program); General Statutes § 17b-892 (revocation of community action agencies' designation to serve political subdivisions).

[12] The department's policy also provides in relevant part that the bureau of collection services is required to request from the department of income maintenance, now the department of social services; see General Statutes § 17b-1; "a statement of assistance for a plaintiff or a relative for whom the plaintiff is legally liable immediately after discovering that the state may have a claim against the proceeds of the plaintiff's cause of action. The [bureau of collection services] shall send a letter to the attorney for the plaintiff informing the attorney of the fact and amount of the claimed lien, the procedures available to the plaintiff to contest the lien, and the attorney's obligation expeditiously to request a final statement of assistance when the proceeds become available. A letter containing the same information and written in plain language will be sent to the plaintiff at the same time."

[13] At oral argument before this court, the plaintiff relied on *Payne* v. *Fairfield Hills Hospital,* 215 Conn. 675, 577 A.2d 1025 (1990), and argued that this court and the trial court have subject matter jurisdiction over his claims because they implicate constitutional supremacy clause issues with

court properly rendered judgment dismissing the plaintiff's administrative appeal, it should have done so for lack of subject matter jurisdiction, rather than on the substantive merits of the case.

The form of the judgment is improper, the judgment is reversed and the case is remanded to the trial court with direction to dismiss the appeal for lack of subject matter jurisdiction.

In this opinion the other justices concurred.

respect to whether the state lien statutes satisfy the state's federal obligation to recover medicaid moneys expended. See 42 U.S.C. § 1396k. The plaintiff's reliance on *Payne* is misplaced because, in that case, the court concluded that the plaintiff's failure to exhaust his administrative remedies did not deprive the courts of subject matter jurisdiction when the plaintiff's claim involved a plenary challenge to General Statutes § 17-257w (c), now General Statutes § 17a-602, as applied to all insanity acquittees. *Payne* v. *Fairfield Hills Hospital,* supra, 681–82. *Payne* is inapposite because the present case does not involve the plaintiff's failure to exhaust administrative remedies; rather, it implicates the different issue of whether a "contested case" exists for purposes of an administrative appeal pursuant to the UAPA. Indeed, in *Payne,* this court stated specifically that, "a party who has a statutory right of appeal from a decision of an administrative agency may not bring an independent action to test the very issues that the statutory appeal was designed to test." Id., 679. Accordingly, and as was noted during the department's oral argument before this court, because the plaintiff has no statutory right of administrative appeal, he is not foreclosed from seeking judicial relief; he just may not do so under the provisions of the UAPA.