EARL B.* v. COMMISSIONER OF
CHILDREN AND FAMILIES
(SC 18063)

Rogers, C. J., and Palmer, Vertefeuille, Zarella and Schaller, Js.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued February 5—officially released July 29, 2008

*James J. Connolly*, supervisory assistant public defender, for the appellant (plaintiff).

*Gregory T. D'Auria*, associate attorney general, with whom were *Susan T. Pearlman*, assistant attorney general, and, on the brief, *Richard Blumenthal*, attorney general, and *Colleen Broderick*, assistant attorney general, for the appellee (defendant).

*Opinion*

VERTEFEUILLE, J. The principal issue in this appeal is whether the plaintiff, Earl B., a juvenile who was

convicted as delinquent and committed to the custody of the defendant, the commissioner of children and families (commissioner), under General Statutes § 46b-140 (j),[1] is entitled to a hearing pursuant to General Statutes § 17a-15[2] to challenge his continued placement

[1] General Statutes § 46b-140 (j) provides: "Except as otherwise provided in this section, the court may order a child be (1) committed to the Department of Children and Families and be placed directly in a residential facility within this state and under contract with said department, or (2) committed to the Commissioner of Children and Families for placement by the commissioner, in said commissioner's discretion, (A) with respect to the juvenile offenders determined by the Department of Children and Families to be the highest risk, in the Connecticut Juvenile Training School, if the juvenile offender is a male, or in another state facility, presumptively for a minimum period of twelve months, or (B) in a private residential or day treatment facility within or outside this state, or (C) on parole. The commissioner shall use a risk and needs assessment classification system to ensure that male children who are in the highest risk level will be placed in the Connecticut Juvenile Training School."

[2] General Statutes § 17a-15 provides in relevant part: "(a) The commissioner shall prepare and maintain a written plan for care, treatment and permanent placement of every child and youth under the commissioner's supervision, which shall include but not be limited to a diagnosis of the problems of each child or youth, the proposed plan of treatment services and temporary placement and a goal for permanent placement of the child or youth, which may include reunification with the parent, long-term foster care, independent living, transfer of guardianship or adoption. The child's or youth's health and safety shall be the paramount concern in formulating the plan.

"(b) The commissioner shall at least every six months, review the plan of each child and youth under the commissioner's supervision for the purpose of determining whether such plan is appropriate and make any appropriate modifications to such plan.

"(c) Any child or youth or the parent or guardian of such child or youth aggrieved by any provision of a plan prepared under subsection (a) of this section, or by the commissioner's decision upon review under subsection (b) of this section, or any child or youth or the parent or guardian of such child or youth aggrieved by a refusal of any other service from the commissioner to which he is entitled, shall be provided a hearing within thirty days following a written request for the same directed to the commissioner.

"(d) Upon motion of any sibling of any child committed to the Department of Children and Families pursuant to section 46b-129, in any pending hearing held pursuant to subsection (c) of this section, such sibling shall have the right to be heard concerning visitation with, and placement of, any such child.

"(e) Any hearing held pursuant to a request made under subsection (c) or (d) of this section shall be conducted as a contested case in accordance with chapter 54 provided: (1) A final decision shall be rendered within fifteen

at the Connecticut Juvenile Training School (training school). The plaintiff appeals[3] from the judgment of the trial court dismissing his appeal from the decision of an adjudicator for the department of children and families (department) and agreeing with the adjudicator's decision, which dismissed the plaintiff's request for a hearing pursuant to § 17a-15 on the ground that the department's decision to continue the juvenile's placement at the training school is not reviewable in a treatment plan hearing under § 17a-15. We conclude that the plaintiff is entitled to a hearing and, therefore, we reverse the trial court's judgment.

The following undisputed facts and procedural history are necessary to our resolution of this appeal. On September 23, 2005, after the plaintiff had been convicted as delinquent,[4] he was committed to the custody of the commissioner for a period not to exceed four years. The plaintiff was immediately placed at the training school. In October, 2005, the department prepared a treatment plan for the plaintiff pursuant to § 17a-15, which called for his placement at the training school for one year prior to being eligible for consideration for placement in a residential treatment program. In April, 2006, the department developed a new treatment plan for the plaintiff, which required him to remain at the training school for a minimum of two years prior to being eligible for placement in a residential treatment program.

---

days following the close of evidence and filing of briefs; and (2) any appeal of a decision pursuant to section 4-183 shall be to the district of the superior court for juvenile matters, where the child is located, as established in section 46b-142. . . ."

[3] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[4] The plaintiff was convicted of conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 53a-134.

The plaintiff then submitted a written request to the commissioner for a hearing pursuant to § 17a-15 (c), claiming to be aggrieved by several provisions of the new treatment plan, including its requirement that the plaintiff remain at the training school for a minimum of two years.[5] The department filed a motion to dismiss the plaintiff's request for a hearing on the ground that the relief requested by the plaintiff was beyond the scope of a treatment plan hearing because it was a request for parole. The plaintiff opposed the motion to dismiss, claiming that § 17a-15 allows a juvenile to challenge any provision of his treatment plan. The adjudicator for the department granted the department's motion to dismiss in part, concluding that, although generally, placement of a juvenile is a proper issue for a treatment plan hearing, placement of a juvenile who is currently in the training school and seeks to be placed in a residential treatment program is a request for parole, which is governed by General Statutes §§ 46b-140 (j)[6] and 17a-7.[7] The adjudicator concluded that the

---

[5] The plaintiff's original request for a hearing sought to challenge only his continued placement at the training school. The department denied the plaintiff's request for a hearing and the plaintiff filed a petition for relief with the Superior Court, seeking an order for the department to convene a hearing at which the plaintiff could challenge any provision of his treatment plan. The department filed a motion to dismiss the plaintiff's petition, which was granted on the ground that the plaintiff did not have an administrative hearing from which to appeal. The plaintiff thereafter filed a second request for a hearing pursuant to § 17a-15 (c), which is the request that gives rise to this appeal.

[6] See footnote 1 of this opinion for the text of § 46b-140 (j).

[7] General Statutes § 17a-7 provides: "Except as otherwise limited by subsection (i) of section 46b-140 and subsection (a) of section 46b-141, the Commissioner of Children and Families or his designee may, when deemed in the best interests of a child committed to the custody of the commissioner as delinquent by the Superior Court, place such child on parole under such terms or conditions as the commissioner or his designee deem to be in the best interests of such child. When in the opinion of the commissioner or his designee it is no longer in the best interest of such child to remain on parole such child may be returned to any institution, resource or facility administered by or available to the Department of Children and Families."

plaintiff's request for parole was a discretionary decision for the commissioner under § 17a-7 and could not be challenged in a treatment plan hearing pursuant to § 17a-15. A hearing pursuant to § 17a-15 was held on the other provisions of the plaintiff's treatment plan and the department issued a decision on those aspects of the treatment plan, none of which is at issue in this appeal.

The plaintiff thereafter appealed from the adjudicator's decision to the Superior Court pursuant to the Uniform Administrative Procedure Act (UAPA), specifically, General Statutes §§ 4-176h and 4-183, seeking a court order that the department provide him with a treatment plan hearing wherein he could challenge his placement at the training school. The trial court determined that although § 17a-15 (c) generally provides that a juvenile aggrieved by any provision of his treatment plan is entitled to a hearing, the more specific provisions of §§ 17a-7 and 46b-140 (j) governed the plaintiff's challenge to his continued placement at the training school. The trial court therefore agreed with the adjudicator's decision and concluded that the plaintiff was not entitled to a treatment plan hearing with regard to his placement at the training school, and rendered judgment dismissing the plaintiff's appeal. This appeal followed.

I

We begin with a threshold jurisdictional issue, namely, whether events that have occurred since the plaintiff filed this appeal have rendered it moot. Subsequent to the filing of this appeal, the department released the plaintiff from the training school and placed him in a residential treatment program in Pennsylvania, where he currently resides. Both parties urge us to consider the merits of the question presented in the present appeal because it is capable of repetition, yet evading review.

"When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot. . . . It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . .

"We note that an otherwise moot question may qualify for review under the capable of repetition, yet evading review exception. To do so, however, it must meet three requirements. First, the challenged action, or the effect of the challenged action, by its very nature must be of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded. Second, there must be a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate. Third, the question must have some public importance. Unless all three requirements are met, the appeal must be dismissed as moot." (Internal quotation marks omitted.) *In re Steven M.*, 264 Conn. 747, 754–55, 826 A.2d 156 (2003). We conclude that the present case meets all three requirements for review under the capable of repetition, yet evading review exception.

First, we acknowledge that most cases addressing the issue of whether a juvenile committed to the custody of the department can challenge his or her continued placement at the training school through a treatment plan hearing would become moot before appellate litigation could be concluded. "If an action or its effects

is not of inherently limited duration, the action can be reviewed the next time it arises, when it will present an ongoing live controversy. Moreover, if the question presented is not strongly likely to become moot in the substantial majority of cases in which it arises, the urgency of deciding the pending case is significantly reduced." (Internal quotation marks omitted.) *Tappin* v. *Homecomings Financial Network, Inc.*, 265 Conn. 741, 747–48, 830 A.2d 711 (2003).

The issue raised in the present appeal is necessarily limited in its duration because there is a strong likelihood that the department will change the juvenile's placement during the pendency of the appeal. In fact, § 17a-15 (b) requires the department to review the treatment plan of each child committed to its custody every six months. Accordingly, the juvenile's placement will be reviewed and likely changed more quickly than the time in which all appeals can be resolved. Moreover, pursuant to General Statutes § 46b-141, commitment of children convicted as delinquent to the department shall be for a maximum of eighteen months, or when convicted for a serious juvenile offense, up to a maximum of four years. The effect of the placement as prescribed in the treatment plan is thus limited by its very nature, and therefore is of such a limited duration that a substantial majority of the cases in which such an order is entered will evade review. *In re Steven M.*, supra, 264 Conn. 755.

The present appeal also satisfies the second requirement for the capable of repetition, yet evading review exception. "A requirement of the likelihood that a question will recur is an integral component of the capable of repetition, yet evading review doctrine. In the absence of the possibility of such repetition, there would be no justification for reaching the issue, as a decision would neither provide relief in the present case nor prospectively resolve cases anticipated in the

future." (Internal quotation marks omitted.) *Loisel* v. *Rowe*, 233 Conn. 370, 384, 660 A.2d 323 (1995). In the present case, we conclude that there exists a reasonable likelihood that the question presented in this case will recur in the future because it is reasonably likely that other juveniles convicted as delinquents will seek to challenge their continued placement at the training school through a treatment plan hearing.

Finally, the issue raised in the present case also meets the public importance requirement. "Since judicial resources are scarce, and typically reserved for cases that continue to be contested between the litigants, this court does not review every issue that satisfies the criteria of limited duration and likelihood of recurrence. Consideration of the importance of the issue represents a sound means for distinguishing those cases that should be reviewed and those that should not." Id., 387. The present appeal calls for us to determine the rights of a juvenile convicted as delinquent and placed in the training school to challenge his continued placement there. We conclude that the resolution of the proper scope of a treatment plan hearing is an issue of public importance. *In re Steven M.*, supra, 264 Conn. 756 ("we conclude that the resolution of the proper scope of inquiry at a transfer hearing when the department seeks to transfer a youth in its custody to the custody of the department of correction presents a question of public importance, specifically, a determination of the standards governing the department's statutory duty to care for the children in its custody, including children who are mentally ill, emotionally disturbed, substance abusers, delinquent, abused, neglected or uncared for" [internal quotation marks omitted]). We therefore conclude that, although moot, the claim raised by the plaintiff in the present appeal is capable of repetition, yet evading review.

## II

On appeal, the plaintiff claims that the trial court improperly concluded that he was not entitled to a treatment plan hearing pursuant to § 17a-15 to challenge his continued placement at the training school. Specifically, the plaintiff claims that the plain and unambiguous language of § 17a-15 (c) allows a juvenile to challenge any provision of his treatment plan, including continued placement at the training school. The plaintiff further asserts that the trial court improperly relied on the language of §§ 17a-7 and 46b-140 (j) and a provision in the department's policy manual in rejecting his claim for a hearing. In response, the commissioner asserts that reading § 17a-15 together with other related statutes reveals that the legislature did not intend for the plaintiff to be able to challenge his continued placement at the training school at a treatment plan hearing pursuant to § 17a-15. Specifically, the commissioner claims that because the plaintiff's placement at the training school under § 46b-140 (j) was based on a determination by the department that he was of "the highest risk," any challenge to his placement at the training school was a request for parole and would fall within the specific provisions of §§ 17a-7 and 46b-140 (j).

As an initial matter, we set forth the appropriate standard of review. Whether the plaintiff has a statutory right to a hearing on his treatment plan to challenge his continued placement at the training school is a question of statutory interpretation over which our review is plenary. "The issue before this court involves a question of statutory interpretation that also requires our plenary review. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether

the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Doe* v. *Norwich Roman Catholic Diocesan Corp.*, 279 Conn. 207, 212, 901 A.2d 673 (2006). "The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Tarnowsky* v. *Socci*, 271 Conn. 284, 287 n.3, 856 A.2d 408 (2004).

We therefore begin our analysis with § 17a-15. See footnote 2 of this opinion. In subsection (a) of § 17a-15, the commissioner is required to prepare and maintain a written treatment plan for every child under the commissioner's supervision. Subsection (b) of § 17a-15 requires that the commissioner review each treatment plan for each child under supervision at least every six months and make appropriate modifications to the plan. The right of an aggrieved person to a hearing on the treatment plan is established in subsection (c) of the statute, which provides: "*Any* child or youth or the parent or guardian of such child or youth aggrieved by *any provision* of a plan prepared under subsection (a) of this section, or by the commissioner's [required biannual review of the plan], or any child or youth or the parent or guardian of such child or youth aggrieved

by a refusal of any other service from the commissioner to which he is entitled, *shall be provided a hearing* within thirty days following a written request for the same directed to the commissioner." (Emphasis added.) General Statutes § 17a-15 (c).

Subsection (c) of § 17a-15 uses the word "any" in two locations. The text provides a right to request a hearing to "[*a*]*ny* child or youth or the parent or guardian of such child or youth" who is "aggrieved by *any* provision" of a treatment plan. (Emphasis added.) General Statutes § 17a-15 (c). The statute does not define the term "any." "In the absence of a statutory definition, words and phrases in a particular statute are to be construed according to their common usage. . . . To ascertain that usage, we look to the dictionary definition of the term." (Internal quotation marks omitted.) *Considine* v. *Waterbury*, 279 Conn. 830, 837, 905 A.2d 70 (2006); see General Statutes § 1-1 (a). The term "any" commonly means "[o]ne, some, every or all without specification . . . ." American Heritage Dictionary of the English Language (4th Ed. 2000). "Although the word any sometimes may, because of its context, mean some or one rather than all, [i]ts meaning in a given statute depends on the context and subject matter of the law." (Internal quotation marks omitted.) *AvalonBay Communities, Inc.* v. *Zoning Commission*, 280 Conn. 405, 414, 908 A.2d 1033 (2006).

The first use of "any" in § 17a-15 (c), to modify "child or youth or the parent or guardian of such child or youth," establishes broadly that all such persons have the right to request a hearing. The second time that "any" is used in § 17a-15 (c), with regard to "any provision" of a treatment plan, it is again broad. Section 17a-15 (c) provides that the party requesting a hearing can be aggrieved by "any provision" of the treatment plan, which presumably will be the topic of the hearing requested. Moreover, this key provision contains no

exclusions; there is no language that suggests that the legislature intended any exception to the right to a treatment plan hearing that is so broadly established in § 17a-15 (c).[8]

The statutory language provides that any aggrieved party "*shall* be provided a hearing within thirty days following a written request for the same directed to the commissioner." (Emphasis added.) General Statutes § 17a-15 (c). We again look to the dictionary for the definition of "shall." The word "shall" is defined as "[h]as a duty to; more broadly, is required to . . . ." Black's Law Dictionary (8th Ed. 2004). We further note that § 17a-15 (a) provides that the treatment plan "shall include, but not be limited to . . . the . . . *temporary placement* and a goal for permanent placement of the child or youth . . . ." (Emphasis added.) Temporary placement, therefore, is a required component of the treatment plan under § 17a-15.

Thus, on the basis of the text of § 17a-15, and the common usage of the words therein, we conclude that the statute establishes that the plaintiff, a youth who is aggrieved by the temporary placement provision of his treatment plan, which calls for him to spend two years at the training school, is required to be given a hearing on that plan within thirty days after a request has been made. The statute is not, by its language, susceptible to more than one reasonable interpretation.

Section 1-2z also requires, however, that we consider the relationship of § 17a-15 to other statutes in determining whether the statute is plain and unambiguous. In the present case, the trial court considered two additional statutes in making its determination that the

---

[8] We further note that § 17a-15 (c) also establishes the right to appeal from a refusal by the commissioner to provide services to which a child or youth is entitled, suggesting that this statute establishes broad rights to hearings within the department.

plaintiff could not challenge his placement at the training school in a treatment plan hearing. The trial court relied on §17a-7; see footnote 7 of this opinion; and § 46b-140 (j). See footnote 1 of this opinion.

Neither § 17a-7 nor § 46b-140 (j), however, addresses a treatment plan hearing. Section 46b-140 (j) sets forth the sentencing options available to the court after a juvenile has been convicted as delinquent. The statute makes no reference at all, however, to treatment plans or treatment plan hearings. Section 17a-7 establishes the commissioner's discretionary authority to place a juvenile within his or her custody on parole. This statute likewise makes no reference at all to treatment plans or treatment plan hearings. We do not see how either § 17a-7 or § 46b-140 (j) renders § 17a-15 susceptible to more than one reasonable meaning. We therefore conclude that the meaning of §17a-15 is clear and unambiguous, and that the plaintiff has the right to contest his continued placement at the training school in a treatment plan hearing pursuant to § 17a-15.

We turn next to the commissioner's argument that, under §§ 17a-7 and 46b-140 (j), the plainitiff's challenge to his placement at the training school was a request for parole that could not be challenged at a treatment plan hearing. The trial court was persuaded by this argument, but we disagree.

We begin our analysis of this claim with the text of §§ 17a-7 and 46b-140 (j). Section 46b-140 (j) (2) sets forth three alternative placement options available to the department for placement of a child committed to its custody after having been convicted as delinquent. Section 46b-140 (j) (2) provides that the department may place a child or youth in any of the following ways: "(A) with respect to the juvenile offenders determined by the [department] to be the highest risk, in the [training school], if the juvenile offender is a male, or in

another state facility, presumptively for a minimum period of twelve months, or (B) in a private residential or day treatment facility within or outside this state, or (C) on parole." "[The legislature's] use of the disjunctive 'or' between subparts of a statute indicates that the legislature intended its parts to be read separately, in the disjunctive." *Gaynor* v. *Union Trust Co.*, 216 Conn. 458, 467, 582 A.2d 190 (1990). The statutory language of § 46b-140 (j) (2) clearly reveals that parole is a placement option different and distinct from placement at the training school or placement in a private treatment facility. If it were not, it would not have been listed as a separate, possible disposition in the disjunctive sentence.

We turn now to § 17a-7. That section provides in relevant part that "[w]hen in the opinion of the commissioner or his designee it is no longer in the best interests of such child to remain on parole such child may be returned to any institution, resource or facility *administered by or available to the [d]epartment . . . .*" (Emphasis added.) General Statutes § 17a-7. Section 17a-7 is consistent with § 46b-140 (j) in that it refers to parole as an alternative to placement in an institution or facility, whether that institution or facility is administered by the department or is an institution or facility "available to" the department. In the context of the language of both statutes, parole is a status distinct from placement in any facility. We disagree with the commissioner's argument that parole is any placement other than the training school, and that the plaintiff therefore is seeking parole.[9]

At oral argument, the commissioner also relied on *In re Darien S.*, 82 Conn. App. 169, 842 A.2d 1177, cert.

---

[9] The department's policy manual defines parole in part as "any placement of a delinquent child at a facility, resource or location other than [the training school]." Dept. of Children and Families, Policy Manual, § 22-9-2, p. 2. This definition is inconsistent with the plain meaning of §§ 17a-7 and 46b-140 (j).

denied, 269 Conn. 904, 852 A.2d 733 (2004), asserting that the Appellate Court already had considered and rejected the claim made by the plaintiff in the present case that he has the statutory right to challenge his placement at the training school in a treatment plan hearing. We disagree with the commissioner's interpretation of that case. In *In re Darien S.*, a juvenile who was convicted as delinquent claimed that, at a permanency plan hearing pursuant to § 46b-141, the department was required to make an evidentiary showing to justify the continuation of an imposed delinquency commitment. Id., 172. The Appellate Court rejected this claim, concluding that the sole purpose of a permanency plan hearing is to provide a prompt judicial hearing to review the permanency goal specified in the permanency plan submitted by the department; id., 178; and that the statute did not require the department to make an evidentiary showing to justify the continuation of the juvenile's imposed delinquency commitment. Id., 180.

The commissioner contends that the Appellate Court's reasoning in *In re Darien S.* is applicable to the present case. We disagree. Unlike the juvenile in *In re Darien S.*, the plaintiff in the present case does not claim that the department must make an evidentiary showing to justify a court imposed delinquency commitment. He claims, instead, that he is entitled, under a different statute, to a hearing to address the department's choice of placement during his court imposed commitment. The juvenile in *In re Darien S.* raised a challenge to the essence of the juvenile commitment that was imposed by the court, whereas the plaintiff in the present case is challenging a placement decision made by the department. We conclude, therefore, that the reasoning of *In re Darien S.* is not applicable to the present case.

The commissioner also claims that the judgment of the trial court dismissing the appeal should be affirmed because the trial court did not have jurisdiction to consider the plaintiff's appeal because it failed to satisfy the "contested case" requirement of the UAPA in that the plaintiff was not entitled to a hearing. Specifically, the commissioner asserts that because the plaintiff in the present case was not entitled to a treatment plan hearing on his continued placement at the training school, there was no contested case within the meaning of General Statutes § 4-166 (2). In support of this claim, the commissioner asserts that § 4-166 (3) (A) defines a final decision as "the agency determination in a contested case," and § 4-166 (2) defines a contested case, in relevant part, as "a proceeding . . . in which the legal rights, duties or privileges of a party are *required by state statute or regulation to be determined by an agency after an opportunity for hearing or in which a hearing is in fact held* . . . ." (Emphasis added.)

It is well established that "[t]here is no absolute right of appeal to the courts from a decision of an administrative agency. . . . The UAPA grants the Superior Court jurisdiction over appeals of agency decisions only in certain limited and well delineated circumstances. . . . Judicial review of an administrative decision is governed by . . . § 4-183 (a) of the UAPA, which provides that [a] person who has exhausted all administrative remedies . . . and who is aggrieved by a final decision may appeal to the [S]uperior [C]ourt . . . . A final decision is defined in § 4-166 (3) (A) as the agency determination in a contested case . . . . Not every matter or issue determined by an agency qualifies for contested case status. . . . [W]e have determined that even in a case where a hearing is in fact held, in order to constitute a contested case, a party to that hearing must have enjoyed a statutory right to have his legal rights, duties or privileges determined by that agency holding the

hearing . . . . In the instance where no party to a hearing enjoys such a right, the Superior Court is without jurisdiction over any appeal from that agency's determination." (Internal quotation marks omitted.) *Peters* v. *Dept. of Social Services*, 273 Conn. 434, 442–43, 870 A.2d 448 (2005).

Because we have concluded herein that the plaintiff was entitled to a hearing under § 17a-15 on his continued placement at the training school, we further conclude that the plaintiff's claim satisfies the "contested case" requirement of the UAPA. The trial court therefore had jurisdiction to consider the plaintiff's appeal.

The judgment is reversed and the case is remanded to the trial court with direction to render judgment sustaining the plaintiff's appeal and remanding the case to the department for further proceedings consistent with this opinion.

In this opinion the other justices concurred.