AYUMI TEMLOCK *v.* LAWRENCE G. TEMLOCK
(AC 26182)
(AC 26366)

Schaller, Flynn and Stoughton, Js.*

* The listing of judges reflects their status on this court as of the date of oral argument.

Argued January 17—officially released May 23, 2006

*Jeffrey S. Ramer*, for the appellant (plaintiff).

*Samuel V. Schoonmaker IV*, with whom was *Peter M. Bryniczka*, for the appellee (defendant).

*Opinion*

SCHALLER, J. In this consolidated appeal, the plaintiff, Ayumi Temlock, appeals from the judgment of the trial court dismissing her postdissolution motions for enforcement and modification of its child custody orders. The plaintiff claims that the court improperly (1) dismissed the plaintiff's motion for enforcement on the ground of forum non conveniens without holding an evidentiary hearing and (2) determined, without first conducting a hearing, that it lacked jurisdiction to consider the plaintiff's postdissolution motion for modification of the parties' parenting plan and for contempt. We reverse the judgment of the trial court.

The following facts and procedural history are relevant to our discussion. The plaintiff and the defendant, Lawrence G. Temlock, were married in August, 1992, by civil process in Japan and shortly thereafter participated in a religious ceremony in the United States. Following their marriage, the couple spent substantial periods of time residing in both Japan and the United States. In November, 2001, the defendant commenced divorce proceedings in Japan, and both parties participated in those judicial proceedings. Before the divorce proceedings concluded, however, the defendant was transferred by his employer to an office in the United States in January, 2002. The couple moved to the United States and established residence in Connecticut with their two children.

On February 14, 2003, the plaintiff commenced a dissolution of marriage action in Connecticut. On July 28, 2004, the Connecticut trial court rendered judgment dissolving the marriage. The judgment of dissolution incorporated by reference a settlement agreement forged by the parties, which contained a stipulation as to custody and a parenting plan. The stipulation contained the following provisions relevant to this appeal. The defendant would relocate to Japan in August, 2004, and have sole custody of the couple's two children. The plaintiff also would relocate to Japan and would have visitation according to a detailed schedule, which included alternate weekends, Friday afternoons and one additional afternoon per week. At some point following their relocation to Japan, the visitation arrangements became problematic for the plaintiff due to the defendant's refusal to abide by the parenting plan. As alleged in the plaintiff's motion for enforcement, the defendant randomly canceled her visitation with the children, demanded that visitation be supervised, and was both verbally and physically abusive to the plaintiff in front of the children.

Both parties sought intervention from the Japanese court, but received no assistance in resolving the visitation issues.[1] The plaintiff returned to the United States and on September 7, 2004, requested that the Connecticut Superior Court address those disputed visitation issues by granting her motion for enforcement. The defendant filed a motion to dismiss, which was granted by the court on the ground of forum non conveniens on the basis of its determination that all of the parties were then residing in Japan.

Shortly thereafter, the plaintiff reestablished residence in Connecticut, and on November 2, 2004, filed

---

[1] During oral argument, counsel maintained that there was a subsequent proceeding in Japan to address the parties' visitation issues. The record, however, does not reflect such an action.

a motion with the trial court, seeking a modification of the parenting orders and a finding of contempt. The plaintiff requested that the court modify the visitation schedule on the basis of her having reestablished residence in Connecticut and find the defendant in contempt for violating the existing visitation schedule. On March 1, 2005, the court dismissed the motion for modification and contempt[2] on jurisdictional grounds pursuant to General Statutes § 46b-115k[3] upon determining that the plaintiff had interrupted her Connecticut residency by living in Japan for a period of time after the dissolution and prior to filing the motion. This appeal followed.[4] Additional facts will be set forth as necessary.

I

The plaintiff first claims that the court improperly applied the doctrine of forum non conveniens when it dismissed her motion for enforcement of visitation orders without affording the plaintiff an evidentiary hearing. Specifically, the plaintiff argues that General Statutes § 46b-115 et seq., the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), applies to this case and that the inconvenient forum provision

[2] The plaintiff is not appealing from the judgment dismissing the motion for contempt.

[3] When making its determination, the court relied on the following provision of General Statutes § 46b-115k (a), which provides in relevant part: "Except as otherwise provided in section 46b-115n, a court of this state has jurisdiction to make an initial child custody determination if: (1) This state is the home state of the child on the date of the commencement of the child custody proceeding; (2) This state was the home state of the child within six months of the commencement of the child custody proceeding, the child is absent from the state, and a parent or a person acting as a parent *continues to reside in this state* . . . ." (Emphasis added.)

[4] We note that it is necessary to review both claims, as neither individually is dispositive of this appeal. The motion for enforcement requested that the court enforce the provisions of the parenting plan, and the motion for modification sought to alter that parenting plan. The issues presented in the motion for enforcement, however, are separate and distinct from those presented in the motion for modification.

contained in the UCCJEA as set forth in General Statutes § 46b-115q[5] should govern the plaintiff's postjudgment motion. Conversely, the defendant contends that § 46b-115q does not apply in the present case because Japan is not a "state" as defined under the UCCJEA. We agree that § 46b-115q does not govern in this situation, but conclude that the plaintiff still should have been afforded an evidentiary hearing.

Both the common-law doctrine of forum non conveniens and the comparable provision set forth in the UCCJEA require the court to consider certain factors before it may apply the doctrine. Those factors, however, differ in substance and application. In order properly to review the court's application of the doctrine, we must

---

[5] General Statutes § 46b-115q provides in relevant part: "(a) A court of this state which has jurisdiction under this chapter to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum. The issue of inconvenient forum may be raised upon a motion of a party, the guardian ad litem for the child or the attorney for the child, the court's own motion or a request of another court.

"(b) In determining whether a court of this state is an inconvenient forum and that it is more appropriate for a court of another state to exercise jurisdiction, the court shall allow the parties to submit information and shall consider all relevant factors including: (1) Whether family violence has occurred and is likely to continue in the future and which state could best protect the parties and the child; (2) the length of time the child has resided outside this state; (3) the distance between the court in this state and the court in the state that would assume jurisdiction; (4) the relative financial circumstances of the parties; (5) any agreement of the parties as to which state should assume jurisdiction; (6) the nature and location of the evidence required to resolve the pending litigation, including testimony of the child; (7) the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and (8) the familiarity of the court of each state with the facts and issues in the pending litigation.

"(c) If a court of this state determines that it is an inconvenient forum and that a court of another state is a more appropriate forum, it shall stay the proceedings upon condition that a child custody proceeding be promptly commenced in another designated state and may impose any other condition the court considers just and proper. . . . "

as a preliminary matter decide whether the common-law or statutory doctrine applies to the facts of this case.

The plain language of § 46b-115q (a) provides in relevant part that a court may decline to exercise its jurisdiction if it determines that "it is an inconvenient forum under the circumstances *and that a court of another state* is a more appropriate forum. . . ." (Emphasis added.) State is defined under the UCCJEA as "a state of the United States, the District of Columbia, Puerto Rico, the United States Virgin Islands, or any territory or possession subject to the jurisdiction of the United States." General Statutes § 46b-115a (15). Clearly, a foreign country is not included in the definition of state. When Connecticut adopted the 1997 Uniform Child Custody Jurisdiction and Enforcement Model Act (model act), it chose to exclude § 105 (a) of the model act that expands the definition of state to include foreign countries.[6] Although article 1, § 102 (15), of the model act does not include foreign countries in its definition

---

[6] Section 105 (a) of the model act provides: "A court of this State shall treat a foreign country as if it were a State of the United States for the purpose of applying [articles] 1 and 2.

Section 105 further provides: "(b) Except as otherwise provided in subsection (c), a child-custody determination made in a foreign country under factual circumstances in substantial conformity with the jurisdictional standards of this [act] must be recognized and enforced under [article] 3.

"(c) A court of this State need not apply this [act] if the child custody law of a foreign country violates fundamental principles of human rights."

The comment to §105 provides the following additional clarification for this provision: "The provisions of this [a]ct have international application to child custody proceedings and determinations of other countries. Another country will be treated as if it were a state of the United States for purposes of applying Articles 1 and 2 of this [a]ct. Custody determinations of other countries will be enforced if the facts of the case indicate that jurisdiction was in substantial compliance with the requirements of this [a]ct."

Although Connecticut adopted the provisions set forth in §§ 105 (b) and (c) of the model act that address foreign judgments; see General Statutes §§ 46b-115d and 46b-115ii; it chose not to treat foreign countries as states for purposes of other provisions, including its forum non conveniens provision, by excluding § 105 (a) of the model act.

of state,[7] § 105 (a) of the model act is applicable to articles 1 and 2, and expands the definition of state to include foreign countries under its general and jurisdictional provisions.[8] The plaintiff urges us to interpret this exclusion as an indication that the Connecticut legislature intended that foreign countries would warrant more scrutiny when courts are considering whether to apply the doctrine of forum non conveniens. We find this interpretation to be highly implausible and contrary to our principles of statutory interpretation. As our Supreme Court has often stated, "[w]e are constrained to read a statute as written . . . and we may not read into clearly expressed legislation provisions which do not find expression in its words . . . ." (Internal quotation marks omitted.) *Carmel Hollow Associates Ltd. Partnership* v. *Bethlehem*, 269 Conn. 120, 139, 848 A.2d 451 (2004). "[T]his court cannot, by judicial construction, read into legislation provisions that clearly are not contained therein." (Internal quotation marks omitted.) *Genesky* v. *East Lyme*, 275 Conn. 246, 268, 881 A.2d 114 (2005). We conclude, therefore, that § 46b-115q does not apply to this particular case and that the common-law doctrine of forum non conveniens governs in an international child custody proceeding in which a Connecticut judgment has been rendered and there is no record of a foreign judgment.

We now identify the relevant common-law principles and the applicable standard of review that guide our resolution of the plaintiff's claim, as set forth by our Supreme Court in *Durkin* v. *Intevac, Inc.*, 258 Conn. 454, 463–65, 782 A.2d 103 (2001). "A ruling on a motion to dismiss for forum non conveniens is reviewed under

[7] Section 102 (15) of the model act provides: " 'State' means a State of the United States, the District of Columbia, Puerto Rico, the United States Virgin Islands, or any territory or insular possession subject to the jurisdiction of the United States."

[8] See footnote 6.

an abuse of discretion standard. . . . As a common law matter, the doctrine of forum non conveniens vests discretion in the trial court to decide where trial will best serve the convenience of the parties and the ends of justice. . . . In our application of the abuse of discretion standard, we must accept the proposition that simply to disagree with the [trial] court as if the facts had been presented to this court in the first instance cannot be the basis of our decision. . . . [T]he trial court's exercise of its discretion may be reversed only upon a showing of clear abuse. [W]here the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference. . . . Meaningful review, even from this circumscribed perspective, nonetheless encompasses a determination whether the trial court abused its discretion as to either the facts or the law. . . .

"Emphasis on the trial court's discretion does not, however, overshadow the central principle of the forum non conveniens doctrine that unless the balance is strongly in favor of the defendant[s], the [plaintiffs'] choice of forum should rarely be disturbed. . . . Although it would be inappropriate to invoke [a] rigid rule to govern discretion . . . it bears emphasis that invocation of the doctrine of forum non conveniens is a drastic remedy . . . which the trial court must approach with caution and restraint. The trial court does not have unchecked discretion to dismiss cases from [the plaintiffs'] chosen forum simply because another forum, in the court's view, may be superior to that chosen by the plaintiff[s]. . . . Although a trial court applying the doctrine of forum non conveniens must walk a delicate line to avoid implicitly sanctioning forum-shopping by either litigant at the expense of the other . . . it cannot exercise its discretion in order to level the playing field between the parties. The [plain-

tiffs'] choice of forum, which may well have been chosen precisely because it provides the plaintiff[s] with certain procedural or substantive advantages, should be respected unless equity weighs strongly in favor of the defendant[s]. . . .

"[T]he overriding inquiry in a forum non conveniens motion is not whether some other forum might be a good one, or even a better one than the [plaintiffs'] chosen forum. The question to be answered is whether [the plaintiffs'] chosen forum is itself inappropriate or unfair because of the various private and public interest considerations involved. . . . Accordingly, the trial court, in exercising its structured discretion, should place its thumb firmly on the [plaintiffs'] side of the scale, as a representation of the strong presumption in favor of the [plaintiffs'] chosen forum, before attempting to balance the private and public interest factors relevant to a forum non conveniens motion." (Citations omitted; internal quotation marks omitted.) Id.[9]

In adopting the rationale set forth by the United States Supreme Court in *Gulf Oil Corp.* v. *Gilbert*, 330 U.S. 501, 508–509, 67 S. Ct. 839, 91 L. Ed. 1055 (1947), our Supreme Court has stated that the following private

---

[9] The *Durkin* court also noted that even when plaintiffs are foreign to the chosen forum, "the trial court must readjust the downward pressure of its thumb, but not remove it altogether from the plaintiffs' side of the scale. Even though the plaintiffs' preference has a diminished impact because the plaintiffs are themselves strangers to their chosen forum . . . Connecticut continues to have a responsibility to those foreign plaintiffs who properly invoke the jurisdiction of this forum . . . especially in the somewhat unusual [situation in which] it is the forum resident who seeks dismissal. . . . [Therefore] [w]hile the weight to be given to the choice of a domestic forum by foreign plaintiffs is diminished, their entitlement to a preference does not disappear entirely. The defendants challenging the propriety of this choice continue to bear the burden to demonstrate why the presumption in favor of [the plaintiffs'] choice, weakened though it may be, should be disturbed." (Internal quotation marks omitted.) *Durkin* v. *Intevac, Inc.*, supra, 258 Conn. 465.

interest factors must be considered when determining whether to apply the doctrine of forum non conveniens: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process for the attendance of unwilling witnesses, and the cost of obtaining attendance of willing witnesses; (3) the possibility of viewing the accident scene if such viewing is appropriate to the action; (4) the enforceability of a judgment; (5) the relative advantages and obstacles to fair trial; and (6) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Durkin* v. *Intevac, Inc.*, supra, 258 Conn. 467. If the balance of private interest factors is equal, the court must then consider public interest factors. Id., 466. Those public interest factors as set forth in *Gulf Oil Corp* v. *Gilbert,* supra, 508–509, include the following considerations: "[A]dministrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself."

With these principles in mind, we turn to what our Supreme Court has termed a "useful frame of reference for the law of Connecticut" in analyzing claims of forum non conveniens. (Internal quotation marks omitted.) *Durkin* v. *Intevac, Inc.,* supra, 258 Conn. 466. "First, the court should determine whether an adequate alter-

native forum exists that possesses jurisdiction over the whole case. . . . Second, the court should consider all relevant private interest factors with a strong presumption in favor of—or, in the [appropriate circumstances], a weakened presumption against disturbing—the plaintiffs' initial choice of forum. . . . Third, if the balance of private interest factors is equal, the court should consider whether any public interest factors tip the balance in favor of trying the case in the foreign forum. . . . Finally, if the public interest factors tip the balance in favor of trying the case in the foreign forum, the court must . . . ensure that [the] plaintiffs can reinstate their [action] in the alternative forum without undue inconvenience or prejudice." (Citations omitted; internal quotation marks omitted.) Id.

In the present case, in which the court failed to hold a hearing and failed to make findings, it is unclear from the record whether the court considered *any* of those private or public factors when making its determination that Connecticut would not "best serve the convenience of the parties and the ends of justice." (Internal quotation marks omitted.) Id., 463–64. Rather, the record indicates that the court made its decision on the basis of an assertion by the defendant's counsel that all of the parties resided in Japan at the time the motion to dismiss was filed. The following colloquy took place in regard to the defendant's motion to dismiss on the ground of forum non conveniens:

"The Court: Everybody is now living in Japan?

"[The Defendant's Counsel]: Everyone is domiciled in Japan.

"The Court: I am ready to rule. I think Connecticut is an inconvenient forum. As far as the parenting is concerned, I don't see any point in pursuing it if everybody is in Japan."

The court's determination was made without an evidentiary hearing and in reliance solely on counsel's assertion, which clearly is problematic. "[I]t is well settled that statements of counsel are not evidence." (Internal quotation marks omitted.) *Margulies* v. *Cassano*, 52 Conn. App. 116, 120, 725 A.2d 988, cert. denied, 248 Conn. 914, 734 A.2d 564 (1999). As we have often stated, "[g]enerally, when the exercise of the court's discretion depends on issues of fact which are disputed, due process requires that a trial-like hearing be held, in which an opportunity is provided to present evidence and to cross-examine adverse witnesses." (Internal quotation marks omitted.) *New England Savings Bank* v. *Clark*, 54 Conn. App. 121, 124, 734 A.2d 146 (1999). Clearly, an evidentiary hearing was required to resolve the disputed facts in the present case. In addition, the level of analysis required by *Durkin* was absent. In light of the private and public factors that must be weighed before determining whether the doctrine of forum non conveniens should be applied, we conclude that the court abused its discretion by not affording the plaintiff the opportunity for an evidentiary hearing.[10]

## II

The plaintiff next claims that the court improperly dismissed her motion for modification for lack of subject matter jurisdiction. Specifically, the plaintiff argues that the court improperly determined that it lacked jurisdiction without first conducting an evidentiary hearing.[11] The defendant contends that the court prop-

[10] We note that under the inconvenient forum provision of the UCCJEA, a factual inquiry also would have been necessary. See footnote 5.

[11] Included in the plaintiff's claim that the court improperly dismissed her motion for modification is the assertion that the court improperly dismissed her motion sua sponte. That claim has no merit. It is well established that subject matter jurisdiction "may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal." *Peters* v. *Dept. of Social Services*, 273 Conn. 434, 441, 870 A.2d 448 (2005). The record shows that the court advised the parties of the jurisdictional issue and allowed them ample time to brief the issue before the court made its decision.

erly determined that Connecticut had neither exclusive nor concurrent jurisdiction.[12] We agree with the plaintiff that the court should have held an evidentiary hearing to determine whether it had jurisdiction.

The applicable standard of review is well established. "A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Doe* v. *Roe*, 246 Conn. 652, 660, 717 A.2d 706 (1998). "Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented

---

[12] The defendant makes two additional arguments that merit little discussion. First, the defendant contends that the plaintiff's motion for modification was not properly before the court because the court already had determined that it lacked subject matter jurisdiction over the case in its earlier proceeding when it dismissed the plaintiff's motion for enforcement on the ground of forum non conveniens. We find this argument somewhat disingenuous. A dismissal based on forum non conveniens does not mean that a court does not have jurisdiction. Quite the contrary, "[a] court that decides to dismiss a case on the ground of forum non conveniens has jurisdiction but elects to dismiss the case and defer to another forum." *Durkin* v. *Intevac, Inc.*, supra, 258 Conn. 480.

Second, the defendant claims that the plaintiff's motion was not properly before the court because he was not served with an order to show cause pursuant to Practice Book § 25-26 (b). The defendant's briefing of this claim is sparse, and it is unclear exactly how the failure to receive such an order with the motion for modification in any way prejudiced him. We note that because "[t]he design of [the] rules [of practice] being to facilitate business and advance justice, they will be interpreted liberally in any case where it shall be manifest that a strict adherence to them will work surprise or injustice. Practice Book § 1-8. Further, the [r]ules of practice must be construed reasonably and with consideration of this purpose. . . . Rules are a means to justice, and not an end in themselves; their purpose is to provide for a just determination of every proceeding." (Internal quotation marks omitted.) *Shapero* v. *Mercede*, 77 Conn. App. 497, 508 n.18, 823 A.2d 1263 (2003). The defendant clearly had notice of the plaintiff's motion as it was served on the defendant's counsel of record by mail, which is sufficient process. Moreover, the defendant responded to that motion by way of objection and was represented by counsel during oral argument.

by the action before it. . . . If a court lacks subject matter jurisdiction to hear and determine cases of the general class to which the proceedings in question belong, it is axiomatic that a court also lacks the authority to enter orders pursuant to such proceedings. . . . We must determine whether the court had subject matter jurisdiction to entertain the plaintiff's complaint. We are mindful that [a] court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it . . . ." (Citation omitted; internal quotation marks omitted.) *ABB Automation, Inc.* v. *Zaharna*, 77 Conn. App. 260, 263–64, 823 A.2d 340 (2003). "[W]here a decision as to whether a court has subject matter jurisdiction is required, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *Ann Howard's Apricots Restaurant, Inc.* v. *Commission on Human Rights & Opportunities*, 237 Conn. 209, 221, 676 A.2d 844 (1996).

"While it is true that enforcement of a custody modification is made more difficult by the fact that the custodial parent does not live within the court's jurisdiction, the court does not lose control over custody and visitation matters concerning a minor child simply because the child does not presently reside in the state. . . . Rather, [a] trial court's continuing jurisdiction over matters concerning the custody of a child is . . . dependent on those provisions encompassed within the [UCCJEA] . . . ." (Citations omitted; internal quotation marks omitted.) *Margulies* v. *Cassano*, supra, 52 Conn. App. 119; see also *Hurtado* v. *Hurtado*, 14 Conn. App. 296, 303, 541 A.2d 873 (1988).

The UCCJEA, as adopted in chapter 815p of our General Statutes, provides Superior Courts with exclusive jurisdiction to make a child custody determination by initial or modification decree if: "(1) This state is the home state of the child on the date of the commencement of the child custody proceeding; (2) This state

was the home state of the child within six months of the commencement of the child custody proceeding, the child is absent from the state, and a parent or a person acting as a parent continues to reside in this state; (3) A court of another state does not have jurisdiction under subdivisions (1) or (2) of this subsection, the child and at least one parent or person acting as a parent have a significant connection with this state other than mere physical presence, and there is substantial evidence available in this state concerning the child's care, protection, training and personal relationships; (4) A court of another state which is the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under a provision substantially similar to section 46b-115q or section 46b-115r, the child and at least one parent or person acting as a parent have a significant connection with this state other than mere physical presence, and there is substantial evidence available in this state concerning the child's care, protection, training and personal relationships; (5) All courts having jurisdiction under subdivisions (1) to (4), inclusive, of this subsection have declined jurisdiction on the ground that a court of this state is the more appropriate forum to determine custody under a provision substantially similar to section 46b-115q or section 46b-115r; or (6) No court of any other state would have jurisdiction under subdivisions (1) to (5), inclusive, of this subsection. . . ." General Statutes § 46b-115k (a). "Subsection (a) of this section is the exclusive jurisdictional basis for making a child custody determination by a court of this state." General Statutes § 46b-115k (b). Furthermore, § 46b-115k (c) provides: "Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child custody determination."

Even when a Connecticut trial court does not have exclusive jurisdiction over a child custody matter, it

still may maintain concurrent jurisdiction under the UCCJEA pursuant to General Statutes § 46b-115*l* (b),[13] but only "if it has jurisdiction to make an initial determination under section 46b-115k." General Statutes § 46b-115*l* (b).

The plaintiff argues that the court has exclusive jurisdiction under the UCCJEA, pursuant to § 46b-115*l* and that the court improperly relied on the wrong statutory section of the UCCJEA, § 46b-115k (a) (2), to determine that it did not have exclusive jurisdiction. Alternatively, the plaintiff argues that the court has concurrent jurisdiction pursuant to that same statutory section because she meets the requirements set forth in § 46b-115k (a) (2)[14] and (3).[15]

[13] General Statutes § 46b-115*l* provides: "(a) Except as otherwise provided in section 46b-115n, a court of this state which has made a child custody determination pursuant to sections 46b-115k to 46b-115m, inclusive, has exclusive, continuing jurisdiction over the determination until: (1) A court of this state or a court of another state determines that the child, the child's parents and any person acting as a parent do not presently reside in this state; or (2) a court of this state determines that (A) this state is not the home state of the child, (B) a parent or a person acting as a parent continues to reside in this state but the child no longer has a significant relationship with such parent or person, and (C) substantial evidence is no longer available in this state concerning the child's care, protection, training and personal relationships.

"(b) A court of this state which has made a child custody determination but does not have exclusive, continuing jurisdiction under this section may modify that determination only if it has jurisdiction to make an initial determination under section 46b-115k."

[14] Under the UCCJEA, Connecticut retains concurrent jurisdiction over a child custody proceeding if "[t]his state was the home state of the child within six months of the commencement of the child custody proceeding, the child is absent from the state, and a parent or a person acting as a parent continues to reside in this state . . . . " General Statutes § 46b-115k (a) (2).

[15] Under the UCCJEA, Connecticut retains concurrent jurisdiction over a child custody proceeding if "[a] court of another state does not have jurisdiction under subdivisions (1) or (2) of this subsection, the child and at least one parent or person acting as a parent have a significant connection with this state other than mere physical presence, and there is substantial evidence available in this state concerning the child's care, protection, training and personal relationships . . . ." General Statutes § 46b-115k (a) (3).

In dismissing the plaintiff's motion for modification of the parenting plan, the court relied on § 46b-115k (a) (2) to decide that it no longer had jurisdiction over the child custody proceeding because the plaintiff did not live continuously in Connecticut following the dissolution.[16] "[A] court of this state which has made a child custody determination pursuant to sections 46b-115k to 46b-115m, inclusive, has exclusive, continuing jurisdiction over the determination until: (1) A court of this state or a court of another state determines that the child, the child's parents and any person acting as a parent do not presently reside in this state . . . ." General Statutes § 46b-115*l* (a). No trial like hearing was held to determine whether the court had either exclusive or concurrent jurisdiction. As stated previously, even if a court does not have exclusive jurisdiction, it still may have concurrent jurisdiction and be able to modify its child support order if *any of the enumerated conditions* set forth in § 46b-115k are met. To make such a decision, however, the court first must decide necessary issues of fact.

In the present case, whether the court has concurrent jurisdiction depends on certain issues of fact, including, whether Connecticut qualified as the "home state" of the children at the time the motion for modification was filed and whether the plaintiff has a "significant connection with this state." These issues of fact, how-

---

[16] In making its determination that it lacked subject matter jurisdiction, the court made the following oral statement: "I have reached the conclusion that [the plaintiff] has been, what I would have to conclude, engaged in forum shopping, that her paperwork all indicates that she feels that she would be better off in Connecticut and, consequently, she has come back here in an attempt to reestablish a residence in Connecticut. I don't think that is sufficient to meet the statute. And the fact that there is a pending action in Japan, relating to visitation, weighs into this. The fact that the children, with the [defendant], have been out of state continuously for over six months weighs into this. That the continuous residence does not exist weighs into this and that the problem of establishing or attempting to come in underneath the umbrella of the statute I think has not been met."

ever, "cannot initially be determined on appeal." (Internal quotation marks omitted.) *Margulies* v. *Cassano*, supra, 52 Conn. App. 120. "When issues of fact are necessary to the determination of a court's jurisdiction, due process requires that a trial-like hearing be held, in which an opportunity is provided to present evidence and to cross-examine adverse witnesses." (Internal quotation marks omitted.) Id. It bears repeating that "statements of counsel are not evidence." (Internal quotation marks omitted.) Id. The defendant suggests that the court's familiarity with this case is sufficient. We cannot agree, however, that the court's prior involvement with the procedural morass of a case supplants the essential fact finding function of a trial like hearing. We conclude, therefore, that the court improperly determined that it lacked jurisdiction because it failed to afford the plaintiff a trial like hearing.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion, including evidentiary hearings on the plaintiff's motions.[17]

In this opinion the other judges concurred.

[17] In light of our conclusion, it is unnecessary to address the plaintiff's claim that a determination of domicile required an evidentiary hearing.