## MATTHEW A. SCOTT *v.* JACKLYN A. SOMERS
## (AC 26115)

Bishop, Harper and Dupont, Js.

Argued April 26—officially released August 15, 2006

*William F. Gallagher*, with whom, on the brief, were *Hugh D. Hughes* and *Jacklyn A. Somers*, pro se, for the appellant (defendant).

*Lori Welch-Rubin*, with whom was *Ann Coonley*, for the appellee (plaintiff).

*Carolyn Wilkes Kaas*, with whom were *David Roche*, certified legal intern, and, on the brief, *Jessica Reiss* and *Jennifer Jason*, certified legal interns, for the minor child's guardian at litem.

*Opinion*

BISHOP, J. Congress enacted the Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A, to avoid jurisdictional competition and conflict in matters of child custody and visitation and to promote cooperation between state courts. See Pub. L. No. 96-611, 94 Stat. 3569, § 7 (c). This case involves the authority of a Connecticut court to modify a child custody determination rendered by a court of another state. The defendant, Jacklyn A. Somers, appeals from the judgment of the trial court modifying a Florida order and awarding custody of the minor child to the plaintiff, Matthew A. Scott. We reverse the judgment of the trial court.

The child of the unmarried parties was born in New Haven on July 19, 1999. They all resided in Connecticut until February or March, 2001, when they moved to Melbourne, Florida. On November 19, 2002, in response to a motion for temporary relief filed by Somers, a Florida court found Florida to be the child's home state and granted Somers temporary primary custody of the child subject to the visitation rights of Scott.

On August 31, 2004, Scott filed an action for custody of the child in New Haven Superior Court. In his application for custody, Scott represented that the child had resided with him in Connecticut since May, 2003, that both he and the child have a significant connection to Connecticut and that there is substantial evidence in Connecticut concerning the child's present or future care, protection, training and personal relationships. Scott also indicated that Somers previously had been awarded temporary custody of the child by a Florida court.

On October 14, 2004, citing the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), General Statutes § 46b-115 et seq.,[1] the Connecticut court issued an order awarding temporary custody of the child to Scott "until further order of the court regarding jurisdiction."[2] On October 24, 2004, the court held a telephone conference with the Florida court to discuss jurisdiction of the proceedings. Counsel for all of the parties participated in this conference.[3] The courts recognized that there was a factual dispute as to the cir-

---

[1] The UCCJEA became effective July 1, 2000, and replaced the Uniform Child Custody Jurisdiction Act, General Statutes (Rev. to 1999) § 46b-90 et seq., which had been adopted in this state in 1978 and was repealed effective July 1, 2000.

[2] The court did not specify the provision of the UCCJEA under which it was acting, and we note that Scott's application for custody did not allege an emergency, nor did he claim an emergency or immediate threat to the child in the proceedings of October 14, 2004.

[3] Somers was present at the Florida court with her attorney, and Scott was present in Connecticut with his attorney. The Connecticut court had

cumstances of the child's presence in Connecticut[4] and did not agree which state had jurisdiction.

In the midst of this jurisdictional stalemate, on November 12, 2004, the Connecticut court issued an order retaining jurisdiction over this case and the minor child and, on November 29 and 30, 2004, held a final hearing on Scott's application for custody. The court found that the child resided in Connecticut with Scott, that returning her to Somers' care would place her at risk of neglect or abuse and that it was in the child's best interest to modify Florida's custody determination.[5] Accordingly, the court exercised jurisdiction in

also appointed a guardian ad litem to represent the child, who was present for the conference.

[4] Scott represented the following to the Connecticut court: The child was in Connecticut with him from February to August, 2003, by agreement of the parties; the child was back in Connecticut in September, 2003, with some access back and forth between Florida and Connecticut; in either October or November, 2003, Somers brought the child to Tennessee to visit the child's maternal grandmother; Scott received a call from the maternal grandmother asking him to come and pick up the child because she had been left in Tennessee by Somers; after Scott picked up the child in Tennessee, he brought her back to Connecticut and to the pediatrician who discovered that she had a urinary tract infection and strep throat; and the child had been in Connecticut since that time, residing with Scott.

The Florida court had before it a very different set of facts. Somers represented to the Florida court the following: In November, 2003, she took the child to Tennessee to visit the child's grandmother; Scott took the child from the grandmother, and took her to Connecticut and refused to return her to Florida; Somers went to Connecticut in 2004 to retrieve the child and stayed there until June when Scott promised that he would return the child to Florida by July 19, 2004, the child's fifth birthday; Scott did not return the child to Florida by July 19; and, despite her efforts, she was denied contact with the child from June, 2004, until approximately three weeks prior to the October 24, 2004 telephone conference.

[5] In determining that the child was under a threat of being abused or mistreated by Somers, the court found that when Somers had the child in her physical custody, she failed to ensure that the child had a stable home. The court further found that during the last two instances in which Somers had physical custody, the child became ill and that the illnesses were not attended to by Somers. The court found that Somers failed to maintain continuous contact with the child so as to maintain a maternal relationship and that the child does not refer to Somers as her mother but as "Jacklyn."

accordance with General Statutes § 46b-115m (b)[6] of the UCCJEA, and awarded permanent sole legal and physical custody of the child to Scott, subject to visitation by Somers. The court also retained jurisdiction, pursuant to the UCCJEA, over the child and all orders affecting custody and parental access. This appeal followed.

Somers appeals from the court's judgment modifying the Florida court's order and awarding sole legal and physical custody of the child to Scott. Somers claims that the Connecticut court lacked jurisdiction to modify the Florida order. A challenge to the jurisdiction of the court presents a question of law for which our review is plenary. *Eisenberg* v. *Tuchman*, 94 Conn. App. 364, 389, 892 A.2d 1016, cert. denied, 278 Conn. 909, 899 A.2d 36 (2006).

The Commission on Uniform Laws devised the Uniform Child Custody Jurisdiction Act (UCCJA), now adopted in some form by all fifty states, to provide the states with uniform standards for determining custody jurisdiction. *Meade* v. *Meade*, 812 F.2d 1473, 1475 (4th Cir. 1987). The UCCJA was promulgated in an effort to encourage courts considering child custody matters to cooperate in order to arrive at a fully informed judgment transcending state lines and considering all claimants, residents and nonresidents, on an equal basis and from the standpoint of the welfare of the child. Because states enacted different versions of the UCCJA, however, and state courts have varied in their interpretation of its

---

[6] General Statutes § 46b-115m (b) provides: "Notwithstanding the provisions of this chapter, a court of this state may modify a child custody determination made by a court of another state if: (1) The child resides in this state with a parent; (2) the child has been, or is under a threat of being, abused or mistreated by a person who resides in the state which would have jurisdiction under the provisions of this chapter; and (3) the court of this state determines that it is in the child's best interest to modify the child custody determination."

provisions, the UCCJA proved to be an inadequate solution to the problem of parental kidnapping and interstate custody disputes. Id., 1475–76. In an attempt to address the decree recognition problems existing under the UCCJA, Congress passed the PKPA on December 28, 1980.[7] The jurisdictional provisions of the PKPA, codified at 28 U.S.C. § 1738A, essentially impose on states a federal duty, under enumerated standards derived from the UCCJA, to give full faith and credit to the custody decrees of other states and amounts to a federal adoption of key provisions of the UCCJA for all states.[8] See *Thompson* v. *Thompson,* 484 U.S. 174, 181, 108 S. Ct. 513, 98 L. Ed. 2d 512 (1988) (purpose of PKPA is "to provide for nationwide enforcement of custody orders made in accordance with the terms of the UCCJA"). To the extent that the PKPA and the UCCJA conflict, the Supremacy Clause of the United States constitution[9] mandates that the PKPA preempts the state's enactment of the UCCJA. See *Rogers* v. *Rogers,* 907 P.2d 469, 471 (Alaska 1995); *Matter of Adoption*

---

[7] Notwithstanding its title, the PKPA is not limited in its application to cases involving child abduction but extends to all child custody determinations and the full faith and credit to be accorded to such determinations. *Rees* v. *Reyes,* 602 A.2d 1137 (D.C. App.), cert. denied, 503 U.S. 991, 112 S. Ct. 1686, 118 L. Ed. 2d 400 (1992); *Peterson* v. *Peterson,* 464 A.2d 202 (Me. 1983); *Tufares* v. *Wright,* 98 N.M. 8, 644 P.2d 522 (1982); *Holm* v. *Smilowitz,* 83 Ohio App. 757, 615 N.E.2d 1047 (1992); *Davidson* v. *Davidson,* 169 Wis. 2d 546, 485 N.W.2d 450 (1992).

[8] See also *Thompson* v. *Thompson,* 484 U.S. 174, 182 n.3, 108 S. Ct. 513, 98 L. Ed. 2d 512 (1988), citing PKPA Joint Hearing 40–41 (statement of Senator David Durenberger of Minnesota); PKPA: Addendum to Joint Hearing on S. 105 before the United States Senate Subcommittee on Criminal Justice of the Committee on the Judiciary and the Subcommittee on Child and Human Development of the Committee on Labor and Human Resources, 96th Cong., 2d Sess., 104–105 (1980) (letter from Assistant Attorney General Patricia M. Wald to Representative Peter W. Rodino, Jr., of New Jersey).

[9] The constitution of the United States, article six, cl. 2, provides in relevant part that the "Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

*of Child by T.W.C.*, 270 N.J. Super. 225, 233, 636 A.2d 1083 (1994); *Barndt* v. *Barndt*, 397 Pa. Super. 321, 334, 580 A.2d 320 (1990); *Wilcox* v. *Wilcox*, 862 S.W.2d 533, 544 (Tenn. App. 1993); *Shute* v. *Shute*, 158 Vt. 242, 246, 607 A.2d 890 (1992).

In this case, the court modified the Florida order on the basis of § 46b-115m (b). Arguably, Connecticut's version of the UCCJEA would provide Connecticut with jurisdiction to modify Florida's custody order. As will be explained in more detail, however, Connecticut does not have jurisdiction because the PKPA requires the Connecticut court to examine Florida law in making its jurisdictional assessment. Florida, however, has no statutory provision parallel to § 46b-115m (b) of the Connecticut UCCJEA. Rather, Florida law provides that Florida, as the originating state and the continuing residence of Somers, has exclusive, continuing jurisdiction over this matter. In this circumstance, the PKPA requires that the Connecticut court defer to the Florida court's continuing jurisdiction.

The governing principle of the PKPA requires that "authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsection (f), (g), and (h) of this section, any custody determination or visitation determination made consistently with the provisions of this section by a court of another State." 28 U.S.C. § 1738A (a). Section 1738A (d) then provides the crucial presumption of continuing jurisdiction and expresses its clear intent to reserve the modification of child custody determinations to the state of initial rendition.[10] *Meade* v. *Meade*, supra, 812 F.2d 1476.

---

[10] Section 1738A (d) of title 28 of the United States Code provides: "The jurisdiction of a court of a State which has made a child custody or visitation determination consistently with the provisions of this section *continues* as long as the requirement of subsection (c) (1) [that the state has jurisdiction as a matter of its own law] of this section continues to be met and such State remains the residence of the child or of any contestant." (Emphasis added.)

Section 1738A (f), the exception to the prohibition on modification contained in subsection (a), "restates the same presumption [of continuing jurisdiction], but in terms of an interdiction of assertions of jurisdiction by a second state when the first state's jurisdiction continues." Id. It provides: "A court of a State may modify a determination of the custody of the same child made by a court of another State, if—(1) it has jurisdiction to make such a child custody determination; and (2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination." 28 U.S.C. § 1738A (f).[11] The PKPA thus preserves to the state that initially enters a child custody determination that is valid under its own law and is consistent with the PKPA the sole prerogative to modify that determination, as long as any modification would also be valid under its own law and either the child or a contestant continues to live in the state.[12] Thus, "the PKPA anchor[s] exclusive modification jurisdiction in the original home state as long as the child or one of the contestants remains in that state." (Internal quotation marks omitted.) *State ex rel. Ferrara* v. *Neill*, 165 S.W.3d 539, 543 (Mo. App. 2005); *Crump* v. *Crump*, 821 P.2d 1172, 1174–75 (Utah App. 1991).

"The effect of §§ 1738A (d) and 1738A (f) is to limit custody jurisdiction to the first state to properly enter

---

[11] Furthermore, the PKPA prohibits a state court from exercising jurisdiction in any child custody dispute over which another state is currently exercising jurisdiction in accordance with 28 U.S.C. § 1738A: "A court of a State shall not exercise jurisdiction in any proceeding for a custody or visitation determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody or visitation determination." 28 U.S.C. § 1738A (g).

[12] See *Thompson* v. *Thompson*, supra, 484 U.S. 174, which provides: "Once a State exercises jurisdiction consistently with the provisions of the [PKPA], no other State may exercise concurrent jurisdiction over the custody dispute . . . even if it would have been empowered to take jurisdiction in the first instance, and all States must accord full faith and credit to the first State's ensuing custody decree." (Citation omitted.) Id., 177.

a custody order, so long as two sets of requirements are met. First, the PKPA defines a *federal* standard for continuing exclusive custody jurisdiction: the first state must have had proper initial custody jurisdiction when it entered its first order (according to criteria in the [PKPA]) and it must remain 'the residence of the child or any contestant' when it later modifies the order. Second, the [PKPA] incorporates a *state law* inquiry: in order to retain exclusive responsibility for modifying its prior order the first state must still have custody jurisdiction as a matter of its own custody law." (Emphasis in original.) *Meade* v. *Meade*, supra, 812 F.2d 1477. Even if the federal and state criteria for continuing jurisdiction are met, the court in the state that first had jurisdiction can, if it chooses, voluntarily relinquish jurisdiction in favor of a court better situated to assess the child's needs. Accordingly, the PKPA explicitly limits the circumstances under which a state that might otherwise have jurisdiction over a child custody dispute is required to defer to the state that originally issued the custody order. With these principles in mind, we turn to the case at hand.

Here, it is undisputed that Florida initially exercised jurisdiction in this case in conformity with the PKPA.[13] It is also undisputed that Somers continues to reside in Florida. Thus, the only remaining question is whether Florida continues to have jurisdiction under its law. Florida has enacted a version of the UCCJEA that provides that Florida has exclusive, continuing jurisdiction over its child custody determinations until "(a) [a] court of this state determines that the child, the child's parents, and any person acting as a parent do not have a

---

[13] A state's child custody determination is made consistent with the PKPA if the state court making the child custody determination: "(1) . . . has jurisdiction under the law of such State; and (2) one of the following conditions is met: (A) such State (i) is the home State of the child on the date of the commencement of the proceeding . . . ." 28 U.S.C. § 1738A (c).

significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or (b) [a] court of this state or a court of another state determines that the child, the child's parent, and any person acting as a parent do not presently reside in this state." Fla. Stat. Ann. § 61.515 (1) (West 2005). Because Somers continues to reside in Florida, the Florida court has exclusive, continuing jurisdiction over its custody determination, under Florida law, until a *Florida court* determines that significant connections do not exist in Florida.[14] Thus, a party seeking to modify Florida's custody determination must obtain an order from Florida stating that it no longer has jurisdiction.[15] This was not done in the present case and, therefore, Connecticut did not have jurisdiction to modify Florida's order.

There is also nothing in the record to indicate that Florida relinquished its jurisdiction. To the contrary, following the October 24, 2004 telephone conference, the Florida court determined that it had jurisdiction and awarded primary residential custody of the child to Somers. Thus, notwithstanding the strictures of the PKPA, we are faced with two conflicting custody orders resulting from a jurisdictional quagmire. Relying on the action taken by the court of his or her respective state of residence, neither party participated in the proceedings of the other state. Somers did not participate in

[14] The use of the phrase, "[a] court of this state," in Fla. Stat. Ann. § 61.515 (1) (a) and (b) makes clear that the state in which the original decree was issued is the sole determinant of whether jurisdiction continues.

[15] In *Yurgel* v. *Yurgel*, 572 So. 2d 1327, 1332 (Fla. 1990), the Florida Supreme Court held that once a court acquires jurisdiction in a child custody case under state statutory law, that jurisdiction is presumed to continue, "and it continues up until a Florida court expressly determines on some other basis that jurisdiction no longer is appropriate, until virtually all contacts with Florida have ceased, until some other Florida statute terminates jurisdiction, or until jurisdiction is terminated by operation of the PKPA."

the Connecticut proceedings, and Scott did not partici-pate in the Florida proceedings. Therefore, regrettably, because each order is based only on the version of events presented by the party present in each state, neither order is fully informed as contemplated by the PKPA.[16]

The judgment is reversed and the case is remanded with direction to dismiss this matter for lack of juris-diction.

In this opinion the other judges concurred.

---

[16] Although the Connecticut court improperly modified Florida's order while Florida maintained jurisdiction over this matter, it is the hope of this court that, prior to the child's upheaval, Florida will hold an evidentiary hearing affording all parties the opportunity to be heard in the appro-priate forum.