******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JASON S. PARISI *v.* ABBY NIBLETT
(AC 42438)

DiPentima, C. J., and Elgo and Devlin, Js.*

*Syllabus*

The plaintiff, who had sought to modify child custody orders entered as part of the judgment of dissolution of his marriage to the defendant, appealed from the trial court's dismissal of that motion. The plaintiff and the defendant had been divorced in Florida. Subsequently, the defendant moved to Alabama and the plaintiff moved to Connecticut. The parties rotated custody of the child on a monthly basis. Their settlement agreement provided that once the child reached formal school age, the parties were to negotiate a time sharing schedule in the best interest of the child. The parties thereafter each sought to enroll the child in kindergarten, in both Connecticut and Alabama. The plaintiff filed a petition for modification of child custody in Florida, which he subsequently withdrew, and the defendant also filed a petition for modification in Florida. The plaintiff then filed a motion to modify child custody in Connecticut. The trial court conducted a telephone conference with the Florida court to discuss jurisdiction, and determined that Florida retained jurisdiction, as the Florida court did not stay its proceedings or relinquish jurisdiction because there was a custody action pending in Florida at the time the plaintiff filed his motion to modify in Connecticut. On appeal, the plaintiff claimed, inter alia, that the trial court erred in concluding that it lacked subject matter jurisdiction without first conducting an evidentiary hearing. *Held*:

1. The trial court properly applied the provisions of the Uniform Child Custody Jurisdiction and Enforcement Act (§ 46b-115 et seq.) to determine if that court had subject matter jurisdiction to modify the Florida court's custody order; contrary to the plaintiff's argument, the domestication of a foreign judgment pursuant to statute (§ 46b-70 et seq.) did not automatically grant subject matter jurisdiction over a foreign judgment, rather, the UCCJEA expressly and unambiguously required that the trial court determine if it had subject matter jurisdiction under the UCCJEA prior to considering the modification of a custody order.

2. The trial court improperly determined that it lacked subject matter jurisdiction because it did not afford the plaintiff an evidentiary hearing, as there were unresolved issues of fact that could not initially be determined on appeal, including whether Connecticut was the home state of the child when the plaintiff filed his motion for modification, whether the time the child spent in Alabama was considered a temporary absence from Connecticut, whether Florida was the home state of the child at the time the defendant's motion for modification was filed in Florida, and whether the plaintiff and the child have a significant connection with Connecticut.

Argued January 23—officially released September 1, 2020

*Procedural History*

Motion by the plaintiff for modification of child custody in connection with a foreign judgment of dissolution, brought to the Superior Court in the judicial district of Hartford, where the court, *Olear, J.*, dismissed the plaintiff's motion, and the plaintiff appealed to this court. *Reversed*; *further proceedings*.

*John F. Morris*, for the appellant (plaintiff).

*Opinion*

DiPENTIMA, C. J. The plaintiff, Jason S. Parisi, appeals from the judgment of the trial court dismissing his motion for modification of Florida child custody orders on jurisdictional grounds. On appeal, the plaintiff claims that the court improperly (1) failed to conclude that it had subject matter jurisdiction to modify the Florida judgment pursuant to General Statutes § 46b-56 (a), and (2) deferred to the Florida court and determined that it lacked subject matter jurisdiction regarding the plaintiff's motion for modification without first conducting an evidentiary hearing. We do not agree with the plaintiff's first claim, but agree with his second claim.[1] Accordingly, we reverse the judgment of the trial court.

The following facts, as gleaned from the record, and procedural history are relevant to the plaintiff's claims on appeal. In March, 2016, the marriage of the plaintiff and the defendant, Abby Niblett, was dissolved in a Florida Circuit Court. The judgment of dissolution incorporated by reference the parties' settlement agreement and parenting plan. The settlement agreement provided that the parties share parental responsibilities with respect to their minor child. The parenting plan provided that "[t]he parents shall have 50/50 parenting time" and specifically provided that "[t]he parents shall have month to month time sharing with the father having the child in the even months and the mother having the child in the odd months. . . . Once the child starts school, the parties shall negotiate to develop a time sharing schedule that is in the best interest of the child." With respect to modification, the parenting plan provided that "[t]he court will revisit the issue of time sharing when the minor child begins attending formal kindergarten."

The plaintiff filed a "supplemental petition for modification of time sharing" in Florida on April 12, 2017. In that petition, the plaintiff stated that, prior to the judgment of dissolution, the defendant had moved to Alabama. The plaintiff sought to be the child's major time sharing parent as a result of the child's having reached the age to attend formal kindergarten. On July 14, 2017, the defendant moved to dismiss the petition. On August 9, 2018, the defendant filed an "emergency motion for return of the minor child" in Florida. In this motion, the defendant alleged that she had moved to Warrior, Alabama in July, 2014, and that, since 2015, both parties continuously conducted parenting time on a monthly rotating basis, but that the plaintiff interfered with that schedule by keeping the child for longer than one month.

In October, 2017, the plaintiff moved to Connecticut. The plaintiff voluntarily withdrew his petition in Florida on September 13, 2018. On September 22, 2018, the

defendant filed a petition for modification in Florida.[2] On October 9, 2018, the plaintiff filed a postjudgment motion for modification in Connecticut. In this motion, the plaintiff alleged that the minor child had attained school age and that the parties have not been able to agree on the school that the child should attend or on new time sharing arrangements. The plaintiff stated that he had enrolled the child in kindergarten in Newington, where he resided, and that the defendant attempted to enroll the child in school in Warrior, Alabama, where she resided. The plaintiff did not file an affidavit, as required by Practice Book § 25-57.[3] On November 5, 2018, the defendant moved to dismiss the plaintiff's motion for modification. In that motion, she noted that the plaintiff had failed to notify the Connecticut court regarding the ongoing child custody litigation in Florida, and argued that Florida retained jurisdiction over the matter.

On December 14, 2018, the Connecticut court conducted a telephone conference with the Florida court to discuss jurisdiction.[4] Counsel for both parties were present, as well as the plaintiff himself.[5] The Florida court noted that a child custody case was pending in Florida. The Florida court explained that it "had jurisdiction when the initial divorce occurred," but that "the parties decided for whatever reason to basically relocate without permission of the Florida court. So in order for the Florida court to have any jurisdiction, one of them would need to move back here with that child. And obviously, they've been doing whatever they want to do, and now, unfortunately, they've got a problem, and coming to the courts to say, we've messed up. So, taking that into account, Florida certainly is not–would have continuing jurisdiction, however, since the child is not here, the venue should not be in Florida, and honestly, it should not be in Connecticut either. The venue should be in Alabama . . . where this child's been for the entire time since the divorce." The Connecticut court stated that "I think since no one is in Florida, not one parent, and not the child, that . . . even though I believe you did have jurisdiction, I believe you had continuing jurisdiction until I think you lost it when everyone left." The Florida court continued, "so we have jurisdiction . . . the problem is this . . . Florida is not going to hear it. . . . [The plaintiff] needs to go to Alabama because we're in a situation where Florida doesn't have any of these people. . . . These two people decided to do whatever they wanted to do, no matter what the court order said. . . . I assume what's going to happen is . . . [the defendant's] attorney will do a motion to domesticate in Alabama, which is actually where that child has been for the last three or four years." The Connecticut court stated that it only had allegations, and no affidavits regarding the child's residence following the divorce. The Florida court noted that the child would come to Florida while the

plaintiff resided in Florida and the defendant in Alabama, and then the plaintiff moved to Connecticut. The Florida court reasoned, "so, right now Florida maintains the continuing jurisdiction, but . . . unless one of them, being the mother or father, is going to move back here to Florida . . . this is going to have to be heard in Alabama, which is where that child has actually been . . . because the [plaintiff] decided to vacate the state of Florida." The plaintiff's attorney noted that the plaintiff had lived in Connecticut for more than one year and the child lived equally in both Connecticut and Alabama during that time. The Florida court noted that the defendant had submitted an affidavit that did not indicate that. The Florida court stated that "the fact of the matter is Florida has continuing jurisdiction." The Connecticut court stated, "I agree, until you give it up." The Florida court stated that it was not giving up jurisdiction. The Florida court asked, "would you just dismiss your jurisdiction or lack of jurisdiction, then [the defendant's attorney] will do what needs to be done?" The Connecticut court responded in the affirmative and stated, "so, you're keeping jurisdiction. So, I'll enter a ruling in our case that due to Florida retaining jurisdiction, we don't have any." The Connecticut court issued an order that day stating that "Florida shall retain jurisdiction in this matter and the plaintiff's motion to modify . . . is hereby dismissed." This appeal followed.

Following oral argument before this court, we ordered the trial court to articulate the factual and legal basis for its decision that it lacked subject matter jurisdiction over the plaintiff's motion for modification. The court clarified that the defendant was living in Alabama and that the plaintiff relocated to Connecticut in violation of the Florida divorce decree and without the consent of the defendant. The court noted that, at the time it dismissed the plaintiff's motion to modify, a custody action was pending in Florida. The court determined that the Florida court did not stay its proceedings or relinquish jurisdiction. The court stated that it dismissed the plaintiff's motion to modify pursuant to General Statutes §§ 46b-115a, 46b-115k, 46b-115*l*, and 46b-115m, particularly in light of the fact that Florida had not relinquished jurisdiction.

I

The plaintiff first claims that, because he followed the statutory procedures for registering the Florida judgment in this state pursuant to General Statutes § 46b-70 et seq., the court was required to conclude that it had subject matter jurisdiction to modify the Florida judgment pursuant to § 46b-56 (a). On September 17, 2018, the defendant filed in Connecticut a copy of the Florida judgment, and certified that the parties had been divorced in Florida on March 23, 2016, that to the best of his knowledge the judgment is final and has not been

modified, altered, amended, set aside or vacated, and that the enforcement of such judgment has not been stayed or suspended, and that such certificate sets forth the full name. He further provided the last known address of the defendant. See General Statutes § 46b-71.[6] He contends that he properly registered the Florida judgment pursuant to § 46b-71 and he also states that "[t]here is no claim . . . that he failed to properly notify the defendant or wait the requisite period before filing this motion." See General Statutes § 46b-72.[7] We do not agree that, following the filing of a certified copy of the Florida judgment, the court was required to conclude that it had subject matter jurisdiction without first examining the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), which is codified in Connecticut at General Statutes § 46b-115 et seq.

Although the plaintiff did not raise this issue in the trial court, we will nonetheless address it because this issue implicates subject matter jurisdiction, which can be raised at any time, including on appeal. See, e.g., *Gonzalez* v. *Commissioner of Correction*, 107 Conn. App. 507, 511, 946 A.2d 252, cert. denied, 289 Conn. 902, 957 A.2d 870 (2008). Plenary review is afforded to issues of subject matter jurisdiction; see, e.g., *Temlock* v. *Temlock*, 95 Conn. App. 505, 518, 898 A.2d 209, cert. denied, 279 Conn. 910, 902 A.2d 1070 (2006); and statutory construction. See, e.g., *Boisvert* v. *Gavis*, 332 Conn. 115, 141, 210 A.3d 1 (2019).

The procedures for domesticating a foreign matrimonial judgment are established by statute. "Foreign matrimonial judgments may be enforced, modified or otherwise dealt with in Connecticut pursuant to the provisions of General Statutes §§ 46b-70 through 46b-75. Section 46b-71 requires the filing of a certified copy of a foreign matrimonial judgment in the courts of this state where enforcement is sought and empowers the courts of this state to treat such a judgment in the same manner as any like judgment of a court of this state." (Footnote omitted.) *Vitale* v. *Krieger*, 47 Conn. App. 146, 148, 702 A.2d 148 (1997). "[Section] 46b-71 (b) consigns to the courts of this state the power to enforce, satisfy, modify, alter, amend, vacate, set aside or suspend a foreign matrimonial judgment that has been properly filed in a Connecticut court." *Mirabal* v. *Mirabal*, 30 Conn. App. 821, 825, 622 A.2d 1037 (1993). "Foreign matrimonial judgment," as the term is used in General Statutes §§ 46b-70 through 46b-75, includes "any judgment, decree or order of a court of any state in the United States in an action for divorce . . . for the custody, care, education, visitation, maintenance or support of children or for alimony, support or the disposition of property of the parties to an existing or terminated marriage, in which both parties have entered an appearance." General Statutes § 46b-70.

Section 46b-70 et seq. establishes the procedures for

domesticating a foreign matrimonial judgment in this state, and the jurisdiction of a trial court to modify a foreign child custody order is limited by the UCCJEA. A trial court is required to determine whether it has jurisdiction to make a custody determination pursuant to the UCCJEA. See *Scott* v. *Somers*, 97 Conn. App. 46, 50–51, 903 A.2d 663 (2006). According to § 46b-56 (a), a trial court may make or modify a child custody order *only* if it has jurisdiction under the UCCJEA. Section 46b-56 (a) provides in relevant part: "In any controversy before the Superior Court as to the custody or care of minor children . . . the court may make or modify any proper order regarding the custody, care, education, visitation and support of the children if it has jurisdiction under the provisions of chapter 815p [UCCJEA]."[8]

The purposes of the UCCJEA coincide with the statutory requirement that a trial court assess its jurisdiction under the UCCJEA prior to modifying a child custody order made by another state. "The purposes of the UCCJEA are to avoid jurisdictional competition and conflict with courts of other states in matters of child custody; promote cooperation with the courts of other states; discourage continuing controversies over child custody; deter abductions; avoid [relitigation] of custody decisions; and to facilitate the enforcement of custody decrees of other states. . . . The UCCJEA addresses [interjurisdictional] issues related to child custody and visitation. . . . The UCCJEA is the enabling legislation for the court's jurisdiction." (Citations omitted; internal quotation marks omitted.) *In re Iliana M.*, 134 Conn. App. 382, 390, 38 A.3d 130 (2012).

Accordingly, § 46b-56 (a) does not automatically grant subject matter jurisdiction over a properly domesticated foreign child custody judgment but, rather, expressly and unambiguously requires the trial court to examine the enabling legislation, the UCCJEA, in order to determine whether it has subject matter jurisdiction to modify Florida's child custody order. We conclude, therefore, that it was proper for the court to apply the provisions of the UCCJEA.[9]

II

The plaintiff claims, alternatively, that the court erred by deferring to the Florida court and dismissing his motion for lack of jurisdiction without first conducting an evidentiary hearing regarding unresolved factual issues pertaining to jurisdiction. We agree with the plaintiff that the court should have held an evidentiary hearing.

"A determination regarding a trial court's subject matter jurisdiction is a question of law. . . . Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. . . . If a court lacks subject matter jurisdiction to hear and determine cases of the general class

to which the proceedings in question belong, it is axiomatic that a court also lacks the authority to enter orders pursuant to such proceedings. . . . We must determine whether the court had subject matter jurisdiction to entertain the plaintiff's [motion to modify]. We are mindful that [a] court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it . . . . [W]here a decision as to whether a court has subject matter jurisdiction is required, every presumption favoring jurisdiction should be indulged." (Citations omitted; internal quotation marks omitted.) *Temlock* v. *Temlock*, supra, 95 Conn. App. 518–19.

"[W]here a jurisdictional determination is dependent on the resolution of a critical factual dispute, it cannot be decided on a motion to dismiss in the absence of an evidentiary hearing to establish jurisdictional facts. . . . [W]hen issues of fact are necessary to the determination of a court's jurisdiction . . . due process requires that a [trial like] hearing be held, in which an opportunity is provided to present evidence and to cross-examine adverse witnesses. . . . [I]n some cases . . . it is necessary to examine the facts of the case to determine whether it is within a general class that the court has power to hear. . . . An evidentiary hearing is necessary because a court cannot make a critical factual [jurisdictional] finding based on memoranda and documents submitted by the parties." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Conboy* v. *State*, 292 Conn. 642, 652–54, 974 A.2d 669 (2009).

The following discussion regarding the enactment of the UCCJEA, as described by the Tennessee Court of Appeals provides background for our analysis. "The UCCJEA was designed as a replacement for the Uniform Child Custody Jurisdiction Act (UCCJA) . . . [which was] [p]romulgated in 1968 in an effort to bring order out of the chaos that once marked interstate custody disputes when the courts of different states claimed authority to issue contradictory custody orders. . . . By 1983, all fifty states had enacted some version of the UCCJA. Unfortunately, state legislatures made significant changes to the UCCJA before adopting it, and . . . [a]s a result, the goal of seamless enforcement of child custody determinations across state lines remained unattained. In 1980, Congress added an additional layer of complexity when it exercised its authority under the [f]ull [f]aith and [c]redit [c]lause [of the United States constitution] and other constitutional provisions to enact the Parental Kidnapping Prevention Act of 1980 (PKPA) . . . . [T]he PKPA deviated from the UCCJA [and] significantly altered the analysis for modification jurisdiction. . . . The PKPA added the concept of continuing jurisdiction, 28 U.S.C.A. § 1738A (c) (2) (E) [and] (d), and provided that once a state had entered or modified a child custody determination in compliance with the statute's jurisdictional require-

ments, its jurisdiction would continue . . . as long as . . . such [s]tate remains the residence of the child or of any contestant. . . . The PKPA prohibited courts from modifying another state's child custody determination if the other state had continuing jurisdiction over the determination and had not declined to exercise it. 28 U.S.C.A. § 1738A (g) [and] (h). Thus, while home state jurisdiction was at the top of the jurisdictional hierarchy under the UCCJA, under the PKPA, continuing jurisdiction trumped home state jurisdiction.

"The prioritization of the four basic jurisdictional tests [of home state jurisdiction, significant connection jurisdiction, inconvenient forum jurisdiction, and jurisdiction when no other basis for jurisdiction is available][10] and the addition of the concept of continuing jurisdiction in the modification context created a gap between the jurisdictional standards of the UCCJA and the PKPA. As a result, child custody determinations made in compliance with the UCCJA were usually, but not always, entitled to full faith and credit—i.e., enforcement and [nonmodification]—in all fifty states as a matter of federal law under the PKPA. . . . The differences between the uniform act and the federal statute spawned numerous jurisdictional clashes that often resulted in the creation of conflicting case law as the courts struggled to parse the fine distinctions between the jurisdictional requirements of the PKPA and the various state versions of the UCCJA. . . . Thus, one of the primary goals of the UCCJEA was to eliminate the friction between the jurisdictional analysis of the PKPA and the uniform act by incorporating clarified versions of the PKPA's prioritized [four part] hierarchy for subject matter jurisdiction and the concept of continuing jurisdiction. . . . Another primary goal of the UCCJEA was to sweep away the enormous body of conflicting decisions that had accreted over the past thirty years under the UCCJA by streamlining the language and structure of the underlying uniform statute. Thus, while the UCCJEA retained the central concepts of the UCCJA and the PKPA, it substantially revised and clarified both the statutory text and the official commentary with the goal of allowing the courts to develop a new and truly uniform body of decisional law to govern interstate child custody disputes." (Citations omitted; footnotes added and omitted; internal quotation marks omitted.) *Staats* v. *McKinnon*, 206 S.W.3d 532, 544–47 (Tenn. App. 2006), appeal denied, Tennessee Supreme Court (October 16, 2006).

In order for a Connecticut court to determine if it had jurisdiction to modify Florida's initial custody order, it must refer to § 46b-115m. That section provides in relevant part that "a court of this state may not modify a child custody determination made by a court of another state unless a court of this state has jurisdiction to make an initial determination under subdivisions (1) to (4), inclusive, of subsection (a) of section 46b-115k and

one of the following occurs: (1) The court of the other state determines that it no longer has exclusive, continuing jurisdiction under a provision substantially similar to section 46b-115*l*; (2) a court of another state determines that a court of this state would be a more convenient forum under a provision substantially similar to section 46b-115q; or (3) a court of this state or another state determines that the child, the child's parents and any person acting as a parent do not presently reside in the other state." General Statutes § 46b-115m (a).

On the basis of the plain language of § 46b-115m (a), in order for Connecticut to have jurisdiction to modify Florida's initial custody order, there must be two findings in the present case:[11] that the Connecticut trial court has initial custody jurisdiction pursuant to § 46b-115k (a) (1) through (4) *and* either that Connecticut or Florida determines that neither parent nor the child presently resides in Florida, thereby ending Florida's exclusive, continuing jurisdiction. These two steps as to whether Connecticut has initial custody jurisdiction and as to whether Florida retains exclusive, continuing jurisdiction, stand on equal footing under the plain language of § 46b-115m (a). We begin our analysis with the latter because it formed the basis of the decision of the Connecticut court.

During the phone conference, the Connecticut court agreed with the Florida court that that Florida court retains exclusive, continuing jurisdiction until the Florida court decides to relinquish such jurisdiction and, as a result, the Connecticut court dismissed the plaintiff's motion for modification. In its articulation, the court noted that it dismissed the plaintiff's motion to modify in light of the UCCJEA, "particularly as Florida did not relinquish jurisdiction." The plaintiff argues that the court improperly deferred to the Florida court, and we agree. The exclusive, continuing jurisdiction provision of Florida's UCCJEA, Fla. Stat. Ann. § 61.515,[12] which is substantially similar to § 46b-115*l*, provides in relevant part: "(1) . . . [A] court of this state which has made a child custody determination consistent with [the provision of Florida's UCCJEA pertaining to initial child custody jurisdiction] . . . has exclusive, continuing jurisdiction over the determination until: (a) A court of this state determines that the child, the child's parents, and any person acting as a parent do not have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or (b) A court of this state *or a court of another state* determines that the child, the child's parent, and any person acting as a parent do not presently reside in this state. (2) A court of this state which has made a child custody determination and does not have exclusive, continuing jurisdiction under this section may modify that determination only if it has jurisdiction to make an initial determination under s. 61.514."

(Emphasis added.) According to the plain language of Fla. Stat. Ann. § 61.515 (1) (a), only Florida can determine if it lost jurisdiction due to a lack of significant contacts/substantial evidence, but pursuant to subsection (b), *either* the Florida court *or* the Connecticut court can determine that the Florida court no longer has exclusive, continuing jurisdiction over the child custody matter due to the child and the child's parents no longer presently residing in Florida.

During the phone conference, the Florida court stated that both parents and the child had left Florida and had relocated to other states. The Florida court specifically explained that the defendant relocated to Alabama, that the child would visit Florida every month while the plaintiff was still in Florida, but that eventually the plaintiff relocated to Connecticut, resulting in a situation in which the child and both parents were no longer in the state of Florida. The Florida court further stated that it would not hear the case and that Alabama, in which no proceeding was then pending, was the proper venue. The Connecticut court stated that "everyone left" Florida, but concluded that it would "enter an order in our case that due to Florida retaining jurisdiction, we don't have any."

The Connecticut court based its decision on an incorrect interpretation of the UCCJEA that Florida retains exclusive, continuing jurisdiction *until* it decides to relinquish it. Although the UCCJEA grants exclusive, continuing jurisdiction over child custody disputes to the state that made the initial custody determination, the UCCJEA also provides an end date to that exclusive, continuing jurisdiction.[13] See General Statutes 46b-115*l* (a); Fla. Stat. Ann. § 61.515 (West 2012); see also *In re Marriage of Nurie*, 176 Cal. App. 4th 478, 502, 98 Cal. Rptr. 3d 200 (2009) (noting UCCJEA "reflects a deliberate effort to provide a clear end-point to the decree state's jurisdiction, to prevent courts from treading on one another's jurisdiction, and to ensure that custody orders will remain fully enforceable until a court determines they are not").

The comment to § 202 of the UCCJEA, which concerns continuing exclusive jurisdiction, explains that "[t]his is a new section addressing continuing jurisdiction. Continuing jurisdiction was not specifically addressed in the UCCJA. Its absence caused considerable confusion, particularly because the PKPA, § 1738 (d), requires other [s]tates to give [f]ull [f]aith and [c]redit to custody determinations made by the original decree [s]tate pursuant to the decree [s]tate's continuing jurisdiction so long as that [s]tate has jurisdiction under its own law and remains the residence of the child or any contestant. . . . This section provides [that the] continuing jurisdiction of the original decree [s]tate is exclusive. It continues until one of two events occurs: 1. If a parent or a person acting as a parent remains in

the original decree [s]tate, continuing jurisdiction is lost when neither the child, the child and a parent, nor the child and a person acting as a parent continue to have a significant connection with the original decree [s]tate and there is no longer substantial evidence concerning the child's care, protection, training and personal relations in that [s]tate. . . . 2. Continuing jurisdiction is lost when the child, the child's parents, and any person acting as a parent *no longer reside* in the original decree [s]tate. . . . The phrase ['do not presently reside'] is meant to be identical in meaning to the language of the PKPA which provides that full faith and credit is to be given to custody determinations made by a [s]tate in the exercise of its continuing jurisdiction when that [s]tate remains the residence of. . . . It is the intention of [the section of the UCCJEA regarding exclusive continuing jurisdiction that the phrase "presently reside"] means that the named persons no longer continue to actually live within the [s]tate. Thus, unless a modification proceeding has been commenced, when the child, the parents, and all persons acting as parents physically leave the [s]tate to live elsewhere, the exclusive, continuing jurisdiction ceases. . . . If the child, the parents, and all persons acting as parents have all left the [s]tate which made the custody determination prior to the commencement of the modification proceeding, considerations of waste of resources dictate that a court in [s]tate B, as well as a court in [s]tate A, can decide that [s]tate A has lost exclusive, continuing jurisdiction. . . . [O]nce a [s]tate has lost exclusive, continuing jurisdiction, it can modify its own determination only if it has jurisdiction under the standards of [initial custody jurisdiction]. . . ." Unif. Child Custody Jurisdiction and Enforcement Act (1997), § 202, comment, 9 U.L.A. (Pt. IA) 511–12 (2019).

Pursuant to the UCCJEA, exclusive continuing jurisdiction ends when the original decree state determines that the significant connection and the substantial evidence requirements are no longer met, *or* when either the original decree state or another state determines that neither parent nor the child continues to reside in the original decree state. See General Statutes § 46b-115*l* (a); Fla. Stat. Ann. § 61.515 (West 2002). The comment to § 203 of the UCCJEA, which concerns jurisdiction to modify a custody determination by another state, states in relevant part: "The modification [s]tate is not authorized to determine that the original decree [s]tate has lost its jurisdiction. The only exception is when the child, the child's parents, and any person acting as a parent do not presently reside in the other [s]tate. In other words, a court of the modification [s]tate can determine that all parties have moved away from the original [s]tate." Unif. Child Custody Jurisdiction and Enforcement Act (1997), § 203, comment, 9 U.L.A. (Pt. 1A) 516. Accordingly, the Connecticut court was not required to defer automatically to the Florida court

under all circumstances, but had the authority to determine whether Florida lost exclusive, continuing jurisdiction as a result of neither parent nor the child presently residing in Florida at the time that the plaintiff commenced his Connecticut modification proceeding.[14] We remand the matter so that the court can apply the proper law.

The remaining step in determining whether Connecticut has jurisdiction to modify the Florida order pursuant to § 46b-115m is for the Connecticut court to assess whether it has jurisdiction to make an initial custody determination pursuant to § 46b-115k (a) (1) through (4). We agree with the plaintiff that the Connecticut court was unable to make the prerequisite findings without an evidentiary hearing.

Section 46b-115k (a) (1) through (4) establishes a hierarchy of four bases that grant a state jurisdiction to make an initial custody determination: home state jurisdiction, significant connection jurisdiction, and more appropriate forum jurisdiction. Specifically, § 46b-115k (a) provides in relevant part: "(1) This state is the home state of the child on the date of the commencement of the child custody proceeding; (2) This state was the home state of the child within six months of the commencement of the child custody proceeding, the child is absent from the state, and a parent or a person acting as a parent continues to reside in this state; (3) A court of another state does not have jurisdiction under subdivisions (1) or (2) of this subsection, the child and at least one parent or person acting as a parent have a significant connection with this state other than mere physical presence, and there is substantial evidence available in this state concerning the child's care, protection, training and personal relationships; (4) A court of another state which is the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under a provision substantially similar to section 46b-115q or section 46b-115r, the child and at least one parent or person acting as a parent have a significant connection with this state other than mere physical presence, and there is substantial evidence available in this state concerning the child's care, protection, training and personal relationships . . . ."

It is undisputed that the Florida court had jurisdiction to make an initial determination regarding custody when it rendered its dissolution judgment on March 23, 2016. In the judgment of dissolution, the Florida court found that Florida was the home state of the child and that the father had been a resident of the state of Florida for at least six months prior to the filing of the petition for the dissolution of marriage. See Fla. Stat. Ann. § 61.514 (West 2002). Since then, however, circumstances have changed and the child and both parents have relocated out of Florida. Although the Florida

court had jurisdiction to make the March 23, 2016 initial determination regarding custody, there currently are unresolved issues of fact regarding whether Florida or Connecticut has jurisdiction to modify the March 23, 2016 determination.

Home state jurisdiction, which is given first priority when determining initial custody jurisdiction, exists when, in relevant part, a state is the "home state" of the child "on the date of the commencement" of the proceeding or when the state was the home state of the child within six months of the "commencement" of the proceeding. See General Statutes § 46b-115k (1) and (2). Section 46b-115a (7) defines "home state" in relevant part as "the state in which a child lived with a parent or persons acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. . . . A period of temporary absence of any such person is counted as part of the period."

Although Florida had jurisdiction on March 23, 2016, to make an initial determination, there exists no provision in the UCCJEA providing that jurisdiction to make an initial determination continues until the state relinquishes jurisdiction even if all parties have moved out of the state prior to the commencement of a modification proceeding. In other words, "initial determination" and the "commencement" of a proceeding do not necessarily mean the same thing. An "initial determination" is defined as "the first child custody determination concerning a particular child . . . ." General Statutes § 46b-115a (8). " 'Commencement' " is defined as "the filing of the first pleading in a proceeding . . . ." General Statutes § 46b-115a (5). " 'Child custody proceeding' means a proceeding in which legal custody, physical custody or visitation with respect to a child is an issue. . . ." General Statutes § 46b-115a (4). A proceeding concerning the modification of an initial custody determination fits within the definition of "child custody proceeding." Accordingly, as the UCCJEA bears out, a motion for modification of child custody constitutes the commencement of a child custody proceeding.

The general scheme of the UCCJEA and Connecticut case law provide a basis for interpreting the filing of a motion for modification as the commencement of a proceeding. First, § 46b-115m (3) provides that this state can modify another state's custody order if certain criteria relevant to initial custody jurisdiction are met and, among other possible additional factors, a court of this state or another state determines that the child and the parents no longer reside in the other state. Additionally, in *Temlock* v. *Temlock*, supra, 95 Conn. App. 522, this court used the date of the filing of a motion for modification as the relevant date for determining home state. We find persuasive, and agree with, the reasoning used by the Nevada Supreme Court

when interpreting "commencement of the proceeding" under the UCCJEA provision of Nevada's initial custody jurisdiction statute, which is virtually identical to § 46b-115k. The court stated: "The relevant proceeding for purposes of determining the date of the commencement of the proceeding . . . is not the original divorce proceeding. Rather, it is the [postdivorce] motion concerning custody or visitation that controls. . . . To hold that the proceeding refers to the original dissolution action would confer perpetual jurisdiction over matters of custody to the courts of the state which granted the dissolution, regardless of whether the parties or child had any further connection with that state . . . a result that is contrary to the underlying purpose of the UCC-JEA. . . . [W]e [therefore] must interpret commencement of the proceeding to mean the recent, [postdivorce] proceeding concerning the custody of the child." (Internal quotation marks omitted.) *Friedman* v. *Eighth Judicial District Court*, 127 Nev. 842, 849, 264 P.3d 1161 (2011); see also *Wahlke* v. *Pierce*, 392 S.W.3d 426, 429 (Ky. App. 2013) ("[J]urisdiction under the UCCJEA 'attaches at the commencement of a proceeding' . . . . So, a family court's jurisdiction to modify custody is determined at the time the motion to modify is filed.").

The plaintiff filed his motion for modification in Connecticut on October 9, 2018, approximately one year after he moved to Connecticut. At that time, the defendant lived in Alabama and the child resided with the parties on an alternating monthly basis. Under these circumstances, there are issues of fact as to whether Connecticut was the home state of the child on October 9, 2018, particularly whether the time the child spent in Alabama is considered a "temporary absence" from Connecticut.[15]

Next in the hierarchy of initial custody jurisdiction is "significant connection" jurisdiction, § 46b-115k (a) (3), which exists when a court of another state does not have home state jurisdiction and the child and at least one parent must have a significant connection to the state.[16] Whether Florida was the home state of the child at the time the defendant's motion for modification was filed in Florida is an unresolved factual issue as is the question of whether the plaintiff and the child have a significant connection with Connecticut.[17] Thus, the determination of jurisdiction is dependent on unresolved factual issues that "cannot initially be determined on appeal. . . . When issues of fact are necessary to the determination of a court's jurisdiction, due process requires that a [trial like] hearing be held, in which an opportunity is provided to present evidence and to cross-examine adverse witnesses." (Citation omitted; internal quotation marks omitted.) *Temlock* v. *Temlock*, supra, 95 Conn. App. 523. We conclude that the court improperly determined that it lacked jurisdiction because it did not afford the plaintiff an evidentiary hearing. See id.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion, including an evidentiary hearing on the plaintiff's motion for modification.

In this opinion, DEVLIN, J., concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] The defendant did not file a brief and we have ordered that this appeal be considered on the basis of the plaintiff's brief, oral argument and the record.

[2] The defendant represented this undisputed procedural history to the Connecticut court in her motion to dismiss the plaintiff's motion for modification.

[3] Practice Book § 25-57 provides: "Before the judicial authority renders any order in any matter pending before it involving the custody, visitation or support of a minor child or children, an affidavit shall be filed with the judicial authority averring (1) whether any of the parties is believed to be pregnant; (2) the name and date of birth of any minor child born since the date of the filing of the complaint or the application; (3) information which meets the requirements of the Uniform Child Custody Jurisdiction and Enforcement Act, General Statutes § 46b-115 et seq.; (4) that there is no other proceeding in which either party has participated as a party, witness, or otherwise, concerning custody of the child in any state; and (5) that no person not a party has physical custody or claims custody or visitation rights with respect to the child. This section shall not apply to modifications of existing support orders or in situations involving allegations of contempt of support orders."

[4] General Statutes § 46b-115h provides in relevant part: "(a) A court of this state may communicate with a court in another state concerning a proceeding arising under this chapter. (b) The court may allow the parties to participate in the communication. If the parties are not able to participate in the communication, they must be given the opportunity to present facts and legal arguments before a decision on jurisdiction is made. . . ." See *Berg* v. *Somers*, Superior Court, judicial district of Litchfield, Docket No. FA-12-4012307-S (January 31, 2013) (discussing process of communication between courts); *Coyt* v. *Valdez*, Superior Court, judicial district of Fairfield, Docket No. 11-4035939-S(June 22, 2011) (same).

[5] The Florida court explained that, under Florida law, the defendant's counsel, but not the defendant, was permitted to attend.

[6] General Statutes § 46b-71 provides: "(a) Any party to an action in which a foreign matrimonial judgment has been rendered, shall file, with a certified copy of the foreign matrimonial judgment, in the court in this state in which enforcement of such judgment is sought, a certification that such judgment is final, has not been modified, altered, amended, set aside or vacated and that the enforcement of such judgment has not been stayed or suspended, and such certificate shall set forth the full name and last-known address of the other party to such judgment and the name and address of the court in the foreign state which rendered such judgment. (b) Such foreign matrimonial judgment shall become a judgment of the court of this state where it is filed and shall be enforced and otherwise treated in the same manner as a judgment of a court in this state; provided such foreign matrimonial judgment does not contravene the public policy of the state of Connecticut. A foreign matrimonial judgment so filed shall have the same effect and may be enforced or satisfied in the same manner as any like judgment of a court of this state and is subject to the same procedures for modifying, altering, amending, vacating, setting aside, staying or suspending said judgment as a judgment of a court of this state; provided, in modifying, altering, amending, setting aside, vacating, staying or suspending any such foreign matrimonial judgment in this state the substantive law of the foreign jurisdiction shall be controlling."

[7] General Statutes § 46b-72 provides: "Within five days after the filing of such judgment and certificate, the party filing such judgment shall notify the other party of the filing of such foreign matrimonial judgment by registered mail at his last-known address or by personal service. Execution shall not issue on any such foreign matrimonial judgment for a period of twenty days from the filing thereof and no steps shall be taken to enforce such judgment until proof of service has been filed with the court."

[8] "[Section] 46b-56 (a) which grants the [S]uperior [C]ourt the general authority to make or modify any proper order as to the custody or care of

minor children grants that authority only if the court 'has jurisdiction under the provisions of [c]hapter 815p' which is the chapter setting forth Connecticut's version of the UCCJEA. Accordingly, the criteria for determining jurisdiction set forth in the UCCJEA are applicable in virtually every [family relations] proceeding in which custody and/or visitation orders may be entered. Nevertheless, the issue is not likely to be raised and the UCCJEA requirements are not likely to be discussed if everyone involved resides in Connecticut." A. Rutkin et al., 8 Connecticut Practice Series: Family Law and Practice (2010) § 40:3, p. 437.

[9] We note, however, that the portion of the plaintiff's motion for modification concerning child support is not governed by the UCCJEA. Financial orders, such as child support, are not governed by the UCCJEA. General Statutes § 46b-115a (3) defines "child custody determination" as "a judgment, decree, or other order of a court providing for the legal custody, physical custody or visitation with respect to a child. The term includes a permanent, temporary, initial and modification order. The term does not include an order relating to child support or other monetary obligation of an individual."

[10] These jurisdictional tests also form the basis for initial custody jurisdiction under Connecticut's UCCJEA. See General Statutes § 46b-115k.

[11] There are only two basic findings required in this case because § 46b-115m (a) (1) and (2) are not applicable.

[12] See A. Rutkin et al., 8 Connecticut Practice Series: Family Law and Practice (2010) § 40:10, p. 451 ("[A] Connecticut trial court faced with a motion to modify an out-of-state custody determination should refer to the other state's version of the UCCJEA to determine if modification jurisdiction continues there. If it does, the Connecticut action should be dismissed." (Footnote omitted.)).

[13] Similar to the exclusive, continuing jurisdiction provisions of the UCCJEA, the PKPA "anchor[s] exclusive modification jurisdiction in the original home state as long as the child or one of the contestants remain in that state." (Internal quotation marks omitted.) *Scott* v. *Somers*, supra, 97 Conn. App. 53; see 28 U.S.C. § 1738A (2000). The PKPA extends the requirements of the full faith and credit clause to custody determinations and mandates that each state "shall enforce according to its terms, and shall not modify" a child custody determination, except as provided by the PKPA, "any custody determination or visitation determination made consistently with the provisions of this section by a court of another [s]tate." 28 U.S.C. § 1738A (a) (2000). Under the supremacy clause, the PKPA preempts state law when the two conflict. See, e.g., *Scott* v. *Somers*, supra, 97 Conn. App. 51 (discussing UCCJA, which was later replaced by UCCJEA).

[14] We do not express an opinion as to whether, under the sparse factual record before the trial court, the parents and the child presently reside in Florida. We need not determine, for purposes of this appeal, precisely what the term "presently resides" means, but note that other states have expressed a concern with conflating the phrase with physical presence, reasoning that such an interpretation leads to jurisdictional instability permitting a parent to race to establish a new home state for their child in effort to relitigate custody issues in a friendlier forum once the other parent is no longer physically present in the original decree state for a variety of reasons. See *Brandt* v. *Brandt*, 268 P.3d 406 (Colo. 2012) (concerned with situation in which issuing state could lose jurisdiction if parent is temporarily out of state in hospital or on military assignment); see also K. Wessel, "Home Is Where the Court Is: Determining Residence for Child Custody Matters Under the UCCJEA," 79 U. Chi. L. Rev. 1141, 1143–75 (2012) (detailing difficulties in defining "presently reside"). In an effort to combat forum shopping and encourage stability in custody orders, some states have adopted an approach wherein the relevant inquiry is not whether the parents reside somewhere other than the original decree state, but whether the parents and the child had stopped residing in the original decree state. See *In re Marriage of Nurie*, supra, 176 Cal. App. 4th 499.

[15] We reject the plaintiff's argument that the Connecticut court has subject matter jurisdiction over the motion for modification because Connecticut is the home state of the child. An evidentiary hearing is required in order for the court to make the necessary factual findings for that determination.

[16] The final jurisdictional basis that is implicated in § 46b-115m, is "more appropriate forum" jurisdiction pursuant to § 46b-115k (a) (4). There is no discussion in the record regarding more appropriate forum jurisdiction.

[17] It is not disputed that more than one year after the plaintiff moved to Connecticut in October, 2017, he filed a motion to voluntarily dismiss his Florida modification proceeding on September 13, 2018. Fla. Family Law

Rules of Procedure § 12.420 provides in relevant part: "(a) Voluntary Dismissal. (1) *By Parties*. An action or a claim may be dismissed (A) before trial by serving, or during trial by stating on the record, a notice of dismissal at any time before a hearing on motion for summary judgment, or if none is served or if the motion is denied, before retirement of the jury in a case tried before a jury or before submission of a nonjury case to the court for decision . . . ."

During the phone conference, the Florida court agreed with the defendant's counsel that the plaintiff had voluntarily dismissed his Florida motion, and that the defendant's motion for modification was still pending in the Florida court. It is clear from the phone conference, that the courts were deciding whether Connecticut had jurisdiction over the plaintiff's motion for modification in Connecticut or Florida had jurisdiction over the defendant's pending motion for modification.

———————————————